CARLSON T.V., Plaintiff,

v.

CITY OF MARBLE and Thomas Communications, Defendants.

Civ. No. 5–84–91.

United States District Court, D. Minnesota, Fourth Division.

June 17, 1985.

Mark Knutson, Duluth, Minn., for plaintiff.

Pierre N. Regnier, Jardine, Logan & O'Brien, St. Paul, Minn., for defendant City of Marble.

Michael Flom, Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, Minn., for defendant Thomas Communications.

## MEMORANDUM OPINION AND ORDER FOR JUDGMENT

DIANA E. MURPHY, District Judge.

Plaintiff, Carlson T.V. & Appliance (Carlson), brought this action for damages and injunctive relief against defendants, City of Marble, Minnesota, and Thomas Communications, Inc. (Thomas), alleging violations of the antitrust laws, the Minnesota public bidding statute, *Minn.Stat.* § 412.311, and the Minnesota Cable Communications Act, *Minn.Stat.* §§ 238.01, *et seq.* Jurisdiction is alleged under 28 U.S.C. §§ 1331, 1332. The matter is now before the court upon the motions of defendants for summary judgment and for attorney's fees.

*Background*

This dispute arises out of the decision of the City to operate its own cable television system and to accept the bid of Thomas rather than that of Carlson to construct the system. Carlson bases its claims on the City's operation of the system to the exclusion of a private system and on the City's rejection of its bid to construct the system.

Marble is a small town in Northern Minnesota, and on July 12, 1982, its city council passed a resolution to operate its own cable system. At the same time, the council voted to set up the system outside the scope of the Minnesota Cable Television Act, *Minn.Stat.* § 238.01 *et seq.* (the Act).[1] Bids were received for the construction of the system from Carlson and Thomas, but both bids were rejected. The project was rebid. Then on October 11, 1982 the contract was awarded to Thomas at a public city council meeting.

The City asserts that it rejected the bid of Carlson, a low bid, on advice of counsel because it did not have a bid bond as required by the published notice. Carlson asserts that it had been informed by the mayor of Marble that all of the requirements for the second bid were contained in the second set of specifications. Those specifications did not contain any requirement for a bid bond. Carlson offered immediately to obtain a bond, but that offer was refused by the City. When Carlson subsequently submitted a bid bond, its offer was again refused by the City. Carlson was aware that the contract was awarded to Thomas on October 11, 1982, and it was notified in October 1982 of the beginning of the actual construction of the project in November 1982. The system became operational as of April 1, 1983. Thomas was paid in excess of $108,000 for its work under the contract. This action was filed by Carlson in March of 1984.

*Discussion*

In passing upon a motion for summary judgment, the court is required to view the facts in the light most favorable to the nonmoving party, and the movant has the burden of establishing that no genuine issue of material fact remains and that the case may be decided as a matter of law. *Buller v. Buechler,* 706 F.2d 844, 846 (8th Cir.1983); *Ralph's Distributing Co. v. AMF, Inc.,* 667 F.2d 670 (8th Cir.1981). The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts disclosed in pleadings and affidavits. *Vette Co. v. Aetna Casualty & Surety Co.,* 612 F.2d 1076 (8th Cir.1980). However, the nonmoving party may not merely rest upon allegations or denials of the party's pleadings, but must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial. *Burst v. Adolph Coors Co.,* 650 F.2d 930, 932 (8th Cir.1981).

---

1. A written resolution of its withdrawal from the Act was passed in November, 1982.

*Antitrust Claim*

■ The City moves for summary judgment on count one on the grounds that it is exempt from federal antitrust laws under the state action doctrine. It argues that a municipality is exempt from the antitrust laws under the state action doctrine when the state itself has directed or authorized the anticompetitive practice. It argues that the state action doctrine is applicable in the present case, because the State of Minnesota has authorized, in two separate statutes, municipalities to own and operate their own cable system. *See Minn.Stat.* §§ 465.70, 238.08.

Carlson argues that its claim should withstand the motion for summary judgment. It argues that a municipality is subject to the antitrust laws unless it acts pursuant to a clearly articulated and affirmatively expressed state policy and there is active state supervision of the anticompetitive activity. It argues that no such active state supervision exists here because the City opted out of the Minnesota Cable Communications Act. It presents nine reasons why summary judgment should not be granted including that the City did not accept bids from it for the operation of the system and that the City's operation is a monopoly.

■ The state action doctrine as it applies to municipalities has recently been clarified by the Supreme Court. *See Town of Hallie v. City of Eau Claire,* — U.S. —, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985). *Town of Hallie* makes it clear that municipalities are exempt from the antitrust laws if their anticompetitive activities were authorized "pursuant to state policy to displace competition with regulation or monopoly public service." *Id.* at 1716. Thus, the City's operation of its own cable system is exempt from antitrust scrutiny if it constitutes municipal action in furtherance or implementation of clearly articulated and affirmatively expressed state policy. *Id.; Community Communications Co. v. City of Boulder,* 455 U.S. 40, 102 S.Ct. 835, 70 L.Ed.2d 810 (1982). Additional requirements are imposed where the anticompeti-

tive conduct is by private parties, but a municipality need only satisfy the above test. *Town of Hallie,* 105 S.Ct. at 1720; *Southern Motor Carriers Rate Conference v. United States,* — U.S. —, 105 S.Ct. 1721, 1727 & n. 20, 85 L.Ed.2d 36 (1985).

The City cites two separate statutory provisions to support its assertion that its allegedly anticompetitive activity constitutes state action. *Minn.Stat.* § 465.70 provides that any statutory city:

> may own, construct, acquire, purchase, maintain and operate within its corporate limits a television signal distribution system for the purpose of· receiving, transmitting, and distributing television impulses and television energy, including audio signals and transient visual images, to the inhabitants of the city. This system shall be considered a public utility.

*Minn.Stat.* § 238.08, which is part of the Cable Communications Act, provides as follows:

> Nothing in this chapter shall be construed to limit any municipality from the right to construct, purchase, and operate a cable communications system.

The statutes clearly contemplate that a city may engage in anticompetitive behavior. It is a foreseeable, and indeed the likely, result of granting the City the right to establish and operate its own cable system that it will do so to the exclusion of a private system. *Town of Hallie,* 105 S.Ct. at 1718–19. The statutory provisions plainly show a "clearly articulated and affirmatively expressed" state policy to displace competition with regulation or monopoly public service. *See id.; Central Iowa Refuse Systems, Inc. v. Des Moines Metropolitan Area Solid Waste Agency,* 715 F.2d 419 (8th Cir.1983), *cert. denied,* — U.S. —, 105 S.Ct. 1864, 85 L.Ed.2d 158 (1985); *Hopkinsville Cable T.V., Inc. v. Pennyroyal Cablevision, Inc.,* 562 F.Supp. 543 (W.D.Ky.1982). Accordingly, the City is exempt from antitrust scrutiny, and its motion for summary judgment on count one should be granted.

*Other Claims*

Both defendants seek summary judgment on the claims alleged in count two under the public bidding statute, *Minn. Stat.*, § 412.311, and the Minnesota Cable Communications Act, *Minn.Stat.*, § 238.01, *et seq.*

Carlson characterizes count two as a claim for wrongful award of contract. It asserts that since it submitted the lowest bid it should have been awarded the contract. It claims that its failure to submit a bid bond was not a sufficient basis to deny it the contract. It also argues that the statutes asserted in count two were violated because the City conspired with Thomas to assure that plaintiff would not be awarded the contract. In support of this contention it cites an alleged comment by one city council member, the manner in which the bid was awarded, and the failure of Thomas to install the specified equipment. Beyond that, the affidavit of Heinz Carlson, one of the owners of Carlson T.V. & Appliance alleges a conflict of interest in that Lloyd Cogswell was employed by the City to assist in the bid process and also was hired by Thomas to assist in the installation of the system.

Defendants argue that Carlson has no standing to assert a claim under the public bidding statute, that it cannot recover lost profits, and that in any event the claim is barred by laches. The City asserts that it properly removed itself from the requirements of the Cable Communications Act and therefore is entitled to summary judgment on any claim asserted under the Act. Thomas argues that it also is exempt from the Act because it merely installed the system and does not own or operate it.

■ The general rule for the letting of public contracts is that an unsuccessful bidder is not entitled to damages. *Telephone Assoc., Inc. v. St. Louis County Bd.*, 364 N.W.2d 378 (Minn.1985); 10 McQuillin, *The Law of Municipal Corporations*, § 29.83 (3d ed. 1981). This is be-

cause the authority for letting public contracts is derived for the public benefit and is not intended as a direct benefit to the contractor. *Id.*

Nevertheless, *Telephone Associates* allowed the recovery of some damages because "proper challenges to the bid-letting process should be encouraged." *Telephone Associates*, 364 N.W.2d at 382. The court held that the unsuccessful bidder should not have to bear the expense of its actions, at least during such time as it proceeded diligently. *Id.* The court allowed the recovery of the costs incurred in preparing the unsuccessful bid and its expenses, including reasonable attorney fees. It specifically excluded loss of profit from any recoverable damages.

■ Carlson cannot recover damages under the reasoning of *Telephone Associates.* Rather, its claim falls under the general rule that an unsuccessful bidder is not entitled to damages. Damages were allowed in *Telephone Associates* because the bidder had proceeded diligently and on a timely basis in challenging the bid process. *Id.* In contrast, Carlson did not file this action challenging the bid process until almost a year and one-half after the construction of the system began, and a year after construction was completed.[2] This delay occurred even though Carlson had an attorney with him when his bond was rejected and had knowledge that the system was being constructed. Carlson was available to commence the litigation at all times and has presented no reasons for his delay. Because Carlson was not diligent in his challenge of the bid process he is not entitled to recover any damages.

■ Carlson's action is also barred by the defense of laches. There are two criteria for dismissal for laches: (1) unreasonable delay in bringing the suit and (2) prejudice to the defendant caused by such delay. *See Funchie v. Packaging Corp. of America*, 494 F.Supp. 662 (D.Minn.1980).

---

**2.** Construction began on the project in November of 1982 and was completed in April of 1983.

This action was filed March 26, 1984.

For the reasons stated above, the delay in filing this action was unreasonable under the circumstances of this case. The delay was prejudicial to the defendants because the bid award was finalized and the construction of the cable system was undertaken. By the time the action was filed the system was fully operational, Thomas' role was long completed, and the bid procedure could not be undone.

■ The defendants are also entitled to summary judgment on the allegations made under the Cable Communications Act. Carlson does not specify in its complaint or memorandum any particular section of the Act that it alleges was violated. The affidavit of Heinz Carlson claims that the actions of defendants violate *Minn.Stat.* § 238.15 which prohibits any financial interest in a bidding party not only by board members, but also their employees.

The court must first address the threshhold issue of whether the Act is even applicable to the defendants. The Act applies only to "Cable communications systems" and "Cable communications companies" operating in Minnesota. *Minn.Stat.* § 238.-03. A city can remove itself from the provisions of the Act if it has greater than 50, but fewer than 1,000 subscribers, and its governing body votes by resolution to do so.[3] The City properly voted by resolution in July of 1982, to remove itself from the provisions of the Act, thus it is exempt from the Act's coverage.[4] Similarly since

Thomas merely installed the system and does not own, control, operate, manage, or lease the system, it also does not fall under the coverage of the Act.[5]

## ORDER

Accordingly, based on the above and all the files, records, and proceedings herein,

IT IS HEREBY ORDERED that

1. The motion of defendant, the City of Marble, Minnesota, for summary judgment is granted, and the complaint against it is dismissed with prejudice.

2. The motion of defendant, Thomas Communications, Inc., for summary judgment is granted, and the complaint against it is dismissed with prejudice.

3. The motion of defendant, Thomas Communications, Inc., for attorney's fees is denied.

LET JUDGMENT BE ENTERED ACCORDINGLY.

---

**3.** *Minn.Stat.* § 238.02, subd. 3 provides that the definition of "Cable communications system" does not include:

> (a) a system which serves fewer than 50 subscribers or a system which serves more than 50 but fewer than 1,000 subscribers if the governing bodies of all political subdivisions served by the system, vote, by resolution, to remove the system from the provisions of this chapter. Any system which serves more than 50 but fewer than 1,000 subscribers that has been removed from the provisions of this chapter shall be returned to the provisions of this chapter if the governing bodies of fifty percent or more of the political subdivisions served by the system vote, by resolution in favor of the return;

**4.** Carlson argues that while the City may be excluded from the definition of a cable commu-

nication system it should nevertheless fall under the provisions of the Act as a cable communication company. A cable communication company is "any person owning, controlling, operating, managing or leasing a cable communications system within the state." *Minn.Stat.* § 238.02, subd. 2. By its resolution the City has removed itself from the provisions of the Act. *Minn.Stat.* § 238.02, subd. 3(a). It is not within the definition of a cable communication company because it is not engaging in any of the *covered activities* with a cable communications system.

**5.** While defendants are entitled to summary judgment, Carlson's complaint and opposition to these motions were not frivolous or in bad faith. Accordingly, the motion of Thomas for attorney's fees should be denied.