David A. MELTON, et al.,
Plaintiffs-Appellees,

v.

Bill GUNTER, etc., et al., Defendants-Appellants.

Metropolitan Dade
County, Defendant,

No. 84–5095.

United States Court of Appeals,
Eleventh Circuit.

Oct. 18, 1985.

James A. Peters, Shirley A. Walker, Asst. Attys. Gen., Tallahassee, Fla., for Gunter & Lewis.

Augustus D. Aikens, Jr., Div. Atty., Div. of Retirement, Tallahassee, Fla., for McMullian.

Joseph Paglino, Richard Weiss, Asst. Co. Atty., Miami, Fla., Bruce Rogow, Ft. Lauderdale, Fla., for Melton, et al.

Before HILL, KRAVITCH and SMITH *, Circuit Judges.

EDWARD S. SMITH, Circuit Judge:

Appellants Bill Gunter, Gerald D. Lewis, and Andrew J. McMullian, III (Gunter), Florida government officials, appeal from a judgment of the United States District Court for the Southern District of Florida, holding section 175.041(3) of the Florida statutes, relating to firefighters retirement, unconstitutional under the equal protection clause of the fourteenth amendment to the Constitution of the United States. We reverse.

### Issues

We confront three issues on appeal. First, we determine whether the dispute is a case or controversy that the district court had jurisdiction to decide. Second, we decide whether the trial court used the proper legal standard to rule on the Florida statute's constitutionality. Finally, we apply the appropriate legal standard to the stat- ute to determine its constitutional validity. As a predicate necessary to our decision of the final issue, we analyse the status of Metropolitan Dade County relative to the state.

### Background

David A. Melton and the other appellees (Melton) challenge the constitutional validity of section 175.041(3) of the Florida statutes. Dade County employs Melton as a firefighter; because Dade County initially hired all firefighters who are in Melton's legal posture, they were required to enroll in the Florida retirement system (FRS). Dade County employs some firefighters who, however, were initially employed by other municipalities within Dade County. These municipalities transferred their firefighting functions to Dade County pursuant to Dade County's home-rule charter and the Florida Constitution. Thus, the municipalities' firefighters became Dade County employees. Before the transfer of function, and while employed by the municipalities, these firefighters participated in a special firefighters retirement system authorized by Florida statutes (chapter 175) and did not participate in FRS. When these former municipal firefighters became Dade County employees, they were given the option of joining FRS or remaining in the special firefighters retirement system. The crux of Melton's complaint is that Dade County and the State of Florida gave him no chance to choose between the two retirement systems.

### Opinion

#### A. Jurisdiction

Gunter contends that Melton could not properly file this action. Gunter argues that the action is not ripe because there is no case or controversy. The United States Supreme Court has characterized such contentions as allegations of lack of justiciability or lack of subject matter jurisdiction.[1] The Court has not defined justiciability within a rigid analytical framework, but has set elastic standards to guide the

* Honorable Edward S. Smith, U.S. Circuit Judge for the Federal Circuit, sitting by designation.

1. *Flast v. Cohen,* 392 U.S. 83, 94, 95, 88 S.Ct. 1942, 1949, 1950, 20 L.Ed.2d 947 (1968).

lower courts in deciding questions of justiciability.[2] The Court's opinion in *Aetna Life Insurance Co. v. Haworth* gives a concise outline of the standards, as follows: [3]

> A "controversy" in this sense must be one that is appropriate for judicial determination. * * * A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. * * * The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. * * * It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. * * * Where there is such a concrete case admitting of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged, the judicial function may be appropriately exercised although the adjudication of the rights of the litigants may not require the award of process or the payment of damages. * * * [Citations omitted.]

Gunter does not argue that the case is moot or comprises a political question, but that there is no conflict over the Florida statutes and that any decision would be an advisory opinion. Gunter explains that Dade County has no valid ordinance authorizing Melton's claim to the chapter 175 firefighters retirement fund, so that Melton has no authorization to choose that retirement system. Therefore, the state's denial of Melton's right to choose a nonexistent retirement fund raises no controversy, according to the *Aetna* guidelines.

We hold that this action raises a controversy appropriate for judicial determination. Dade County ordinances authorize Melton's claim but the state law invalidates the ordinances. If the state law were held unconstitutional, then the Dade County enabling ordinance would no longer be invalid under section 175.041(3) and Melton could elect his retirement system. If the statute is constitutional, no Dade County enabling ordinance could be valid. The clear conflict over the state statute and the relief that would flow from the resolution of that conflict renders this action justiciable.[4] We affirm the trial court's judgment that it had subject matter jurisdiction over this case.[5]

### B. *Equal Protection*

 Melton contends that his duties, responsibilities, and benefits are equal to those of all other Dade County firefighters, except for the rights of some of those other firefighters to select their retirement systems. Melton claims the Florida statute that allows some firefighters to choose retirement systems while precluding other firefighters from making such a choice violates the following constitutional provision: [6]

AMENDMENT XIV.—* * *

Section 1. * * * No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the law.

The district court relied on a Fifth Circuit decision and required the state to prove the rational basis of the law that established the disputed classification.[7] *Scheinberg,*

---

**2.** *Public Serv. Comm'n v. Wycoff Co.,* 344 U.S. 237, 242, 73 S.Ct. 236, 239, 97 L.Ed. 291 (1952).

**3.** *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937).

**4.** *See generally Baker v. Carr,* 369 U.S. 186, 208–37, 82 S.Ct. 691, 705–21, 7 L.Ed.2d 663 (1962) (reviewing cases concerning justiciability); *McGrath v. Kristensen,* 340 U.S. 162, 71 S.Ct. 224, 95 L.Ed. 173 (1950); *United Public Workers*

*of America (C.I.O.) v. Mitchell,* 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947) (discussing justiciability under different factual backgrounds).

**5.** We have jurisdiction over the instant appeal under 28 U.S.C. § 1291 (1982).

**6.** U.S. CONST. amend. XIV, § 1.

**7.** *Scheinberg v. Smith,* 659 F.2d 476, 483 (5th Cir. Unit B 1981).

however, set the standard of proof required of the state in an abortion case.[8] Abortion cases involve fundamental rights, which warrant strict scrutiny not required in the case at bar.[9] *Michael M.,*[10] a case cited by *Scheinberg* to establish the burden of proof, was a sex discrimination case. Such sex classification cases require the state to justify the classification with a clearly supported, clearly articulated, and substantial rational basis.[11]

The state does not bear such a heavy burden of proof when it makes a purely economic classification.[12] In this case, the state made no suspect classification, nor did it make any classification requiring any sort of heightened scrutiny. *Clements,* therefore, sets forth the appropriate standard as follows: [13]

> The Equal Protection Clause allows the States considerable leeway to enact legislation that may appear to affect similarly situated people differently. Legislatures are ordinarily assumed to have acted constitutionally. Under traditional equal protection principles, distinctions need only be drawn in such a manner as to bear some rational relationship to a legitimate state end. Classifications are set aside only if they are based solely on reasons totally unrelated to the pursuit of the State's goals and only if no grounds can be conceived to justify them.
> * * *

The trial court did not apply the *Clements* standard in this case. We note that the trial judge ruled Gunter's argumentative explanation of a rational basis insufficient to uphold the statute. The trial court, however, is required to invalidate classifications "only if no grounds can be conceived to justify them." [14] Because the trial court used the wrong standard in trying to find a rational basis for the Florida statute, we reverse.

## C. *Rational Basis*

We describe Dade County's relationship to the state to lay the foundation on which we build an explanation of the Florida scheme for providing retirement benefits to firefighters. Dade County serves the dual role of county and municipality, and this dual role is at the heart of the instant controversy.

Historically, county governments have been "mere arms of the state." [15] The county, a quasi-corporation, serves state interests and acts as the state's administrative agent.[16] Florida follows this historical model of county government.[17] Thus, all Florida counties, and Dade County in particular, exist to carry out state functions and policy. Dade County, however, also has powers of local self-government. In this capacity, Dade County provides municipal services of purely local character. The Florida Constitution authorizes Dade County's exercise of the traditional powers of a municipal corporation.[18] The Florida Constitution provides: [19]

> (f) *Dade county—powers conferred upon municipalities.* To the extent not inconsistent with the powers of existing municipalities or general law, the Metropolitan Government of Dade County may

8. *Id.*

9. *Harris v. McRae,* 448 U.S. 297, 312, 316, 100 S.Ct. 2671, 2685, 2688, 65 L.Ed.2d 784 (1980).

10. *Michael M. v. Superior Ct.,* 450 U.S. 464, 101 S.Ct. 1200, 67 L.Ed.2d 437 (1981).

11. *Id.*

12. *Clements v. Fashing,* 457 U.S. 957, 963, 102 S.Ct. 2836, 2843, 73 L.Ed.2d 508 (1982).

13. *Id.* at 962–63, 102 S.Ct. at 2843–44; *McGowan v. Maryland,* 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1104–05, 6 L.Ed.2d 393 (1961).

14. *Clements,* 457 U.S. at 963, 102 S.Ct. at 2843.

15. O. Reynolds, *Local Government Law* 17 (1982).

16. *Id.*

17. FLA. CONST. art. VIII, § 1(a), which provides:

"§ 1. Counties
"(a) *Political subdivisions.* The state shall be divided by law into political subdivisions called counties. Counties may be created, abolished or changed by law, with provision for payment or apportionment of the public debt."

18. FLA. CONST. art. VIII, §§ 1(g), 3, 6(f).

19. FLA. CONST. art. VIII, § 6(f).

exercise all the powers conferred now or hereafter by general law upon municipalities.

This constitutional provision allows the state, through Dade County, to provide standard levels of traditional local governmental services to the densely populated unincorporated areas within Dade County. Florida authorized county home rule to assure provision of standard municipal services to all county residents in densely populated counties. Where a number of municipalities coexist within a county, the county may provide or coordinate some municipal services more easily and more efficiently. For these reasons, Florida has given Dade County a home-rule charter.[20] Dade County does not merely exercise traditional municipal powers in its unincorporated areas; rather, municipalities within Dade County may transfer any of their functions or powers to the county.[21] By allowing such transfer, the state clearly furthers its interests in establishing coordinated and efficient systems for providing local services in population centers. This brings us to the crux of the problem: How may Dade County integrate the municipalities' systems that provide local services into its own county-wide system? In this case, we face the narrow problem of how Dade County may provide retirement benefits for former municipal firefighters now employed by Dade County as a result of a transfer of function.

We start our analysis by defining the character of firefighting. Historically, firefighting was viewed as a purely local concern.[22] Florida treats firefighting as both a municipal and a statewide concern. As the Florida Legislature stated:[23]

175.021. Legislative declaration

It is hereby declared by the Legislature that firefighters, as hereinafter defined, perform state and municipal functions[.] * * *

On this basis, Florida provided municipal firefighters with state retirement benefits under chapter 175.

Florida also provided retirement benefits for state firefighters, but did so through FRS. We observe that county firefighters are state employees because a county is an arm of the state.[24] As such, Florida requires county firefighters to join FRS.[25] The statutes set up a compulsory, centrally managed retirement system.[26] We infer from the statutory scheme that the Florida Legislature intended to guarantee retirement benefits to state employees through a single, centrally managed, actuarially sound retirement system.

Melton claims that the scheme for merging the firefighter retirement plans upon transfer of firefighting functions to Dade County is irrational and that the statute precluding him from choosing a chapter 175 pension is unconstitutional. We analyse this contention by observing that the state could have provided firefighters with retirement in any of four ways upon transfer of function. In the first option, former municipal employees would retain municipal retirement benefits but be precluded from joining FRS. The county employees would be restricted to FRS. Any employees hired after the transfer would be required to join FRS. In this way, a single

20. Note, *The Urban County: A Study of New Approaches to Local Government in Metropolitan Areas*, 73 HARV.L.REV. 526, 526–33 (1960); see generally O. Reynolds, *supra* note 15, at 42–48 (discussing centralized forms of local government).

21. FLA. CONST. art. VIII, § 4.

22. O. Reynolds, *supra* note 15, at 107.

23. FLA.STAT.ANN. § 175.021 (West 1984).

24. See note 17, *supra*.

25. FLA.STAT.ANN. § 121.051(1)(a) (West 1982), which provides:

"121.051 Participation in the system

"(1) Compulsory participation.—

"(a) The provisions of this law shall be compulsory as to all officers and employees, * * * who are employed on or after December 1, 1970, of an employer other than those referred to in paragraph (2)(b), and each officer or employee, as a condition of employment, shall become a member of the system as of his date of employment, * * *."

26. FLA.STAT.ANN. §§ 121.011–.052 (West 1984).

state retirement system would eventually cover all employees, thus effecting the legislature's will as expressed in chapter 121. A second method would be to allow the former municipal firefighters to choose FRS, while restricting all county employees to participation in FRS. This plan works much the same way as the first plan, but has the possible added advantage of speeding "phase in" of FRS by allowing the former municipal employees to choose it. (This is the plan Florida chose to integrate the benefit plans of the two classes of employees.) A third method would allow all firefighters employed at the time of the function transfer to choose between the two retirement systems, but would require all firefighters hired thereafter to participate in FRS. (This is the plan Melton advocates.) The fourth option would be to require all the firefighters to join FRS and to exclude them from any other retirement system.

■ Florida intended to maintain FRS as the only state retirement system for reasons already explained. Clearly, when public employees not participating in FRS become state employees, some provision must be made to integrate them into the retirement system. The key principle is that all employees hired after function transfer *must* participate in FRS. Otherwise, the state would maintain multiple retirement systems indefinitely. We cannot say that any scheme described above for providing firefighters with retirement benefits is irrational. We are not a super-legislature that can choose the plan we think best. Even if we were, we might uphold Florida's plan because it has the advantage of speeding municipal system "phase out" and because it is equitable, in that former municipal firefighters may remain in the retirement system the municipalities promised them when they started work. In short, Florida provided different firefighter classes with different retirement benefit choices in order to integrate retirement systems upon transfer of municipal functions to county government. The state interest in easily managing the state retirement system and keeping it actuarially sound provides the rational basis needed to validate the statutory scheme constitutionally. Because section 175.041(3) has a rational basis, we reverse.

### Conclusion

The district court properly ruled that it had subject matter jurisdiction in this case and that the suit was ripe. The trial court erred, however, by holding that Gunter had to prove the rational basis for the Florida statute in issue under a standard applicable to cases deserving heightened scrutiny. After looking for a rational basis for section 175.041(3) of the Florida statutes under the standard applicable to purely economic classifications, we conclude the trial court's judgment that section 175.041(3) violates the equal protection clause of the fourteenth amendment is in error. Section 175.041(3) is consistent with the United States Constitution. We reverse.

REVERSED.