**COIN CALL, INC., Plaintiff,**

v.

**SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY, INC., Defendant.**

**Civ. A. No. C84–1180A.**

United States District Court, N.D. Georgia, Atlanta Division.

April 11, 1986.

W. Larue Boyce, Jr., Atlanta, Ga., for plaintiff.

Jerre B. Swann, Kilpatrick & Cody, Atlanta, Ga., for defendant.

### ORDER

SHOOB, District Judge.

Plaintiff Coin Call, Inc. sells and leases privately owned coin-operated telephone ("COT") equipment. Defendant Southern Bell Telephone and Telegraph Company, Inc. is a state regulated utility that provides telephone services. In this action, plaintiff complains of the enforcement of a tariff submitted by defendant and approved by the Georgia Public Service Commission ("PSC"). Presently before the Court is defendant's motion for summary judgment.

Prior to the filing of the instant case, the tariff at issue prohibited the resale of telephone services (with certain exceptions not relevant for present purposes).[1] Plaintiff's

---

1. In pertinent part, General Subscriber Service Tariff A.2.2.1(B) provided as follows:

    service furnished by [Southern Bell] is intended only for communications in which the subscriber has a direct interest and shall not be used for any purpose for which a payment or other compensation shall be received by him from any other person, firm or corpora-

COT equipment is designed to resell telephone services. The parties' dispute arose when defendant advised plaintiff's customers that COT equipment violated an existing tariff. As a result, several of plaintiff's customers elected to disconnect the equipment. In cases where a customer declined to act voluntarily, defendant discontinued that customer's service.

Plaintiff commenced this action on June 12, 1984, seeking injunctive relief and damages. Subsequently, Southern Bell submitted a new tariff, which permitted the resale of local telephone services through COT equipment. After several public hearings, the PSC approved a modified version of the new tariff, under which COT equipment is lawful if it has the following characteristics: (1) the ability to access without charge the operator and directory assistance (411); (2) the ability to access without charge emergency service (911); and (3) a sign or display indicating where the caller can obtain assistance if the COT malfunctions.

Because under the current tariff plaintiff is able to conduct its business, it now seeks only damages. At present, the complaint advances an antitrust claim, a 42 U.S.C. § 1983 claim, and state law claims.[2] Through the instant motion, defendant argues that the Court should abstain from exercising its jurisdiction under *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).[3] Defendant also argues that it is shielded from antitrust liability under the doctrine of state action immunity enunciated in *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). The Court will address these arguments in turn.

*Burford Abstention*

■ The abstention doctrine set forth in *Burford* rests upon weighty considera-

tions of federalism. *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). Under *Burford*, abstention is appropriate where the exercise of federal jurisdiction over the case at bar and similar cases would, in itself, disrupt a state's efforts to implement policy through a complex regulatory scheme involving an area of local concern. *Colorado River*, 424 U.S. at 814, 96 S.Ct. at 1244; *Nasser v. City of Homewood*, 671 F.2d 432 (11th Cir.1982). "Because abstention on *Burford* grounds is a refusal to exercise federal jurisdiction in an entire class of cases, it is perhaps the most potent device in [the] area of [abstention]." *Id.* at 440. As is true with other types of abstention, "the decision about whether to abstain [under Burford], although circumscribed, remains primarily up to the district court." *Friends of Children v. Matava*, 766 F.2d 35, 37 (1st Cir.1985); *Chancery Clerk of Chickasaw County v. Wallace*, 646 F.2d 151 (5th Cir.1981). In exercising this discretion, the Court must be mindful of "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246.

■ Although the ambit of *Burford* abstention has not been neatly defined, *Southern Railway Co. v. State Board of Equalization*, 715 F.2d 522, 527 (11th Cir. 1983), *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984), it is plain that abstention cannot be invoked solely because a federal court action involves a state's handling of its own affairs. *Id.* at 439 n. 9; *see also Educational Services, Inc. v. Maryland State Board for Higher Education*, 710 F.2d 170 (4th Cir.1983). Instead, in deciding whether to abstain un-

---

tion for such use, or in the collection, transmission or delivery of any communication for others.

**2.** By order dated April 11, 1985, the Court dismissed plaintiff's claims under 42 U.S.C. §§ 1981, 1982, 1985 and 1986. The Court also dismissed plaintiff's claim under 42 U.S.C. § 1984 because there is no such code section.

**3.** Defendant does not contend that the other types of abstention are applicable. *See Colorado River Conservation District v. United States,* 424 U.S. 800, 813–18, 96 S.Ct. 1236, 1244–46, 47 L.Ed.2d 483 (1976).

der *Burford,* a district court should consider several factors, including: (1) whether the subject matter of the lawsuit is an area of peculiarly local concern, *Friends of Children,* 766 F.2d at 36–37 (domestic relations); *Moos v. Wells,* 585 F.Supp. 1348, 1349–50 (S.D.N.Y.1984) (municipal housing law); (2) whether the lawsuit is controlled by a complex administrative scheme supervised by an expert agency, *see, e.g., Tedford v. Massachusetts Housing Finance Agency,* 522 F.Supp. 508, 511 (D.Mass. 1981), *aff'd mem.,* 676 F.2d 682 (1st Cir. 1982); (3) whether the federal issues in the case can be separated from questions of state law, *Nasser,* 671 F.2d at 439–40; (4) whether the state has confined review of the pertinent issues to a specialized forum, *id.; see also Educational Services,* 710 F.2d at 173–74; *Allstate Insurance Co. v. Sabbagh,* 603 F.2d 228 (1st Cir.1979); *Tedford,* 522 F.Supp. at 511; and (5) whether the statutory grant of federal jurisdiction ensures a federal forum. *Southern Railway,* 715 F.2d at 527–30; *see also Colorado River,* 424 U.S. at 815 n. 21, 96 S.Ct. at 1245 n. 21.

■ Applying the relevant factors to the instant case, the Court concludes abstention is proper with respect to plaintiff's section 1983 and state law claims but would be improper with respect to plaintiff's antitrust claim. The supervision of pay telephone outlets is of primary concern to state, rather than federal, officials.[4] In addition, the Georgia Legislature and the PSC have enacted a complex regulatory scheme controlling the telephone industry. *See* O.C.G.A. §§ 46–5–20 et seq.; Rules of the Georgia Public Service Commission §§ 515–12–1–.01 et seq. The PSC, an expert administration agency, is the forum of first resort for utility disputes, and the

Georgia Legislature has seen fit to concentrate review of PSC decisions in the Superior Court of Fulton County. O.C.G.A. § 50–13–19(b). This venue provision is particularly striking because the rulings of other administrative agencies may be challenged in the district in which the petitioner resides. *Id.* Simply stated, absent an overriding jurisdictional policy, the relevant statutory scheme is the type to which *Burford* abstention applies.

As to plaintiff's section 1983 and state law claims, abstention would not run counter to the Court's jurisdictional mandate. Although the Supreme Court has held that an exhaustion requirement cannot be read into section 1983, *Patsy v. Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982); *McNeese v. Board of Education,* 373 U.S. 668, 674, 83 S.Ct. 1433, 1437, 10 L.Ed.2d 622 (1963), civil rights actions are not exempt from the abstention doctrine. *C-Y Development Co. v. City of Redlands,* 703 F.2d 375 (9th Cir.1983); *Lewellyn v. Gerhardt,* 513 F.2d 184, 187 (7th Cir.1975); *Romero v. Coldwell,* 455 F.2d 1163, 1166–67 (5th Cir.1972). Of course, courts should avoid employing abstention as a *de facto* exhaustion requirement, especially where a section 1983 claim involves paramount constitutional rights. *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974) (first amendment right of expression); *Harman v. Forssenius,* 380 U.S. 528, 537, 85 S.Ct. 1177, 1183, 14 L.Ed.2d 50 (1965) (voting rights). Where as here, however, a plaintiff advances a tenuous constitutional claim, abstention, if applicable, is lawful notwithstanding that jurisdiction is grounded on section 1983.[5] *See, e.g., Friends of Children,* 766 F.2d at 36–37.

---

4. Until June 15, 1984, the Federal Communications Commission ("FCC") refused to register private COT equipment for interconnection with the telephone system. In the order reversing that stance, the FCC noted that its ruling did not "necessarily affect state policies or regulations governing the resale of intrastate toll and local exchange services...." *Registration of Coin Operated Telephones Under Part 68 of the Commission's Rules and Regulations,* FCC 84–270 slip op. at 12 (June 15, 1984). The FCC further

concluded "that ... states may establish tariff requirements governing the features or markings to be permitted or required on [COT equipment] within their borders...." Id. at 13.

5. Furthermore, assuming *arguendo* that plaintiff could show state action for the purposes of section 1983, *see Quinn v. Kent General Hospital,* 617 F.Supp. 1226, 1237 (D.Del.1985), the Court would grant defendant's motion for summary judgment even if abstention were improp-

■ Similarly, abstention is appropriate as to plaintiff's state law claims, which were brought under the doctrine of pendent jurisdiction. *See generally United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). There is no federal policy commanding the Court to exercise its discretionary pendent jurisdiction over plaintiff's state law claims.[6] Moreover, that plaintiff's state law claims are, in part, based on Georgia trade regulation statutes, O.C.G.A. §§ 10-1-370 et seq., militates in favor of abstention. *Naylor v. Case and McGrath, Inc.*, 585 F.2d 557 (2d Cir.1978); *Canaday v. Koch*, 608 F.Supp. 1460, 1464 (S.D.N.Y.), *aff'd*, 768 F.2d 501 (2d Cir.1985).

■ On the other hand, that Congress elected to confer exclusive jurisdiction over antitrust claims on federal courts, 15 U.S.C. § 15, strongly counsels against abstention. *See Southern Railway*, 715 F.2d at 527–30; *Kruse v. Snowshoe Co.*, 715 F.2d 120, 124 (4th Cir.1983), *cert. denied*, 465 U.S. 1065, 104 S.Ct. 1413, 79 L.Ed.2d 739 (1984); *Silberkleit v. Kantrowitz*, 713 F.2d 433 (9th Cir.1983). This is not to suggest that principles of constitutional litigation or federal-state comity can never justify abstention in an area over which a federal court has exclusive jurisdiction. *See Kartell v. Blue Shield of Massachu-*

*setts*, 592 F.2d 1191 (1st Cir.1979). But in this case the Court can dispose of plaintiff's antitrust claim without creating the conflict in federal-state relations that *Burford* abstention prevents, since another doctrine based on deference to state sovereignty—the *Parker* doctrine—addresses more directly the demands of federal-state comity in the antitrust context.

In sum, the Court holds that it is required by *Burford* to abstain from hearing plaintiff's section 1983 and state law claims. Because *Burford* abstention calls for dismissal, rather than a stay, the Court will dismiss these claims without prejudice. *Southern Railway*, 715 F.2d at 527.

### The Parker Doctrine

■ Defendant argues that Georgia's involvement with the tariff at issue is sufficient to give rise to *Parker* immunity to suit under the antitrust laws. The Court agrees. In *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980), the Supreme Court explained the basis for *Parker* immunity as follows:

> [A]ntitrust immunity under *Parker v. Brown* ... is grounded in our federal structure. "In a dual system of government in which, under the Constitution, the states are sovereign, save only as Congress may constitutionally subtract

---

er. Section 1983 is not a source of substantive rights. *Dollar v. Haralson County*, 704 F.2d 1540 (11th Cir.), *cert. denied*, 464 U.S. 963, 104 S.Ct. 399, 78 L.Ed.2d 341 (1983). Thus, to establish liability under section 1983, a plaintiff must show that the defendant's conduct deprived him of a right, privilege or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Here, plaintiff asserts defendant violated the equal protection clause of the fourteenth amendment. Specifically, plaintiff argues that defendant failed to prevent the American Telephone and Telegraph Company ("AT & T") from violating the tariff by using charge card telephones. This claim involves neither a fundamental right nor a suspect classification; accordingly, defendant need only point to a rational basis for distinguishing between AT & T and plaintiff. *E.g., Melton v. Gunter*, 773 F.2d 1548 (11th Cir.1985). Defendant has submitted uncontroverted evidence suggesting such a rational basis—that under the

existing billing arrangement AT & T did not resell defendant's services. *See* Deposition of Charles Glenn Rogers at 28–29, 31, 32. Moreover, even if the distinction represented an arbitrary misapplication of the tariff, plaintiff's claim would fail. *See Creative Environments, Inc. v. Estabrook*, 680 F.2d 822, 833 (1st Cir.), *cert. denied*, 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982) ("It is not enough simply to give ... state law claims constitutional labels such as 'due process' or 'equal protection' in order to raise a substantial federal question under section 1983").

6. In fact, because plaintiff's federal claims are subject to dismissal as a matter of law, *see supra* note 5, and because plaintiff has not adverted to any reason for retaining pendent jurisdiction over his state law claims, *see Henson v. Columbus Bank & Trust Co.*, 770 F.2d 1566 (11th Cir.1985), the Court might well have dismissed plaintiff's state law claims even if abstention were inappropriate.

from their authority, an unexpressed purpose to nullify a state's control over its officers and agents is not lightly to be attributed to Congress." ... In *Parker v. Brown*, this Court found in the Sherman Act no purpose to nullify state powers. Because the Act is directed against "individual and not state action," the Court concluded that state regulatory programs could not violate it.

*Id.* at 103–104, 100 S.Ct. at 942–943 (quoting *Parker*, 317 U.S. at 351, 352, 63 S.Ct. at 313, 314) (citations omitted).

*Midcal* established a two-prong test for determining whether *Parker* immunity is available to an antitrust defendant: (1) the alleged antitrust violation must be the product of an explicit state policy; and (2) the state must actively supervise that policy.[7] 445 U.S. at 105, 100 S.Ct. at 943. Because the immunity is an affirmative defense, the defendant has the burden to satisfy its elements. *See Quinn v. Kent General Hospital, Inc.*, 617 F.Supp. 1226 (D.Del.1985).

A recent Supreme Court case, *Southern Motor Carriers Rate Conference, Inc. v. United States*, 471 U.S. 48, 105 S.Ct. 1721, 85 L.Ed.2d 36 (1985), clarified the *Parker* doctrine in two respects. First, the Supreme Court made it plain for the first time that *Parker* can shield a private party, as well as a state agency, from antitrust liability. Second, departing from the language of earlier cases,[8] the Court held that a state policy that merely permits, rather than compels, a restraint of trade can qualify under the first prong of the *Midcal* test. Under *Southern Motor Carriers*, to meet the first prong of *Midcal*, the defendant must point to an explicit state policy to displace competition in the relevant market; in addition, it is necessary to show that the policy has been set forth or approved by the state legislature or the state supreme court. 105 S.Ct. at 1730; *Massachusetts Furniture & Piano Movers Ass'n. v. Federal Trade Commission*, 773 F.2d 391 (1st Cir.1985).

*Cantor v. Detroit Edison Co.*, 428 U.S. 579, 96 S.Ct. 3110, 49 L.Ed.2d 1141 (1976), preceded the developments discussed above, but it is nonetheless relevant to the case at bar. In *Cantor*, a sharply divided Supreme Court declined to accord antitrust immunity "when a state agency passively accepted a public utility's tariff." *Midcal*, 445 U.S. at 104, 100 S.Ct. at 942; *cf. also Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) (no state action for purposes of 42 U.S.C. § 1983 where a utility enforced a tariff of little or no concern to the state). The tariff involved in *Cantor* sanctioned an electric utility's program of exchanging new light bulbs for burned-out bulbs. A majority of the Court agreed that *Parker* was inapposite because, although the Michigan Legislature had removed competition in the sale of electricity, it had not stated an intention to do so in the relevant market—the sale of light bulbs. *See Southern Motor Carriers*, 105 S.Ct. at 1731.

In the instant case, defendant has demonstrated that it is entitled to *Parker* immunity. In contrast to the situation in *Cantor*, the regulatory scheme at issue here includes the relevant market.[9] Be-

---

7. The second prong of the *Midcal* test is inapplicable where the antitrust defendant is a municipality. *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985).

8. *See, e.g., Goldfarb v. Virginia State Bar*, 421 U.S. 773, 791, 95 S.Ct. 2004, 2015, 44 L.Ed.2d 572 (1975) ("It is not enough that ... anticompetitive conduct is 'prompted' by state action; rather, anticompetitive activities must be compelled by direction of the State acting as a sovereign.")

9. O.C.G.A. § 46–5–41 provides that "no *person* shall construct or operate any telephone line, plant, or system or any extension thereof or acquire ownership or control thereof, either directly or indirectly, without first obtaining from the Public Service Commission a certificate that the present or future public convenience and necessity require or will require such [action]." (Emphasis added.) O.C.G.A. § 46–5–40 defines the term "person," *inter alia*, as "any corporation ... operating a public telephone service...." The PSC has defined a "public telephone service" as "[a]n individual line customer service equipped with a coin collecting telephone instrument installed for the use of the general public in locations where the general

cause a clearly expressed state policy removes competitive forces in the sale and leasing of pay telephones, the first prong of the *Midcal* test is satisfied:

> If more detail than a clear intent to displace competition were required of the legislature, States would find it difficult to implement through regulatory agencies their anticompetitive policies. Agencies are created because they are able to deal with problems unforeseeable to, or outside the competence of, the legislature. Requiring express authorization for every action that an agency might find necessary to effectuate state policy would diminish, if not destroy, its usefulness.

*Southern Motor Carriers*, 105 S.Ct. at 1731.[10]

Turning to the second prong of the *Midcal* test, the Court concludes that the State actively supervised the anticompetitive policy in question. In *Midcal*, the Supreme Court offered the following rationale for the active supervision requirement: "[t]he national policy in favor of competition cannot be thwarted by casting ... a gauzy cloak of state involvement over what is essentially a private ... arrangement." 445 U.S. at 106, 100 S.Ct. at 943. Viewing the facts in the light most favorable to plaintiff, *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), the Court assumes that the tariff was in large measure produced by defendant's initiative. Still, the record demonstrates that the PSC not only actively enforced the original tariff and participated in its revision, but also cited reasons other than the tariff for prohibiting the installation of COT equipment. Several communications from the PSC evince that, during

the relevant period, the agency viewed pay telephone service as being within the sole province of companies certified under O.C. G.A. § 46–5–41.[11] *See supra* note 9. For example, in a letter dated January 27, 1984, Commissioner Robert C. Pafford ("Pafford") made the following statement in response to an inquiry from a prospective COT equipment supplier:

> Coin telephone service is an exchange service which may be provided only by a telephone company which has been certified by the [PSC] to provide exchange service in a specified franchis[e] area.
> The Georgia Supreme Court has held that no competing certificate for the provision of service will be granted unless it is proven that existing certified holders are rendering inadequate service. The telephone companies which are currently certified in Georgia are providing coin telephone service ... and there is no indication that this service does not meet the needs of the public.

Appendix to Defendant's Motion for Summary Judgment at Tab 4.[12] In advancing this view, Pafford relied on similar rulings from the public service commissions of Florida and Kentucky and noted concern regarding "service related issues such as access to directory assistance, operator assistance, ... emergency numbers, ... the handicapped, and the ability to place long distance calls." *Id.* Other PSC communications rejected the installation of COT equipment on the grounds that the Federal Communications Commission refused to register such equipment. *Id.; see supra* note 4. Thus, unlike the tariff in *Cantor*, the tariff here concerned an area over which the PSC actively exercised its au-

---

public has access to these telephones." Rules of Georgia Public Service Commission § 515–12–1–.01 (ee).

**10.** The Court recognizes that the state policy upon which defendant relies is not based exclusively on statutes enacted by the Georgia Legislature. *See supra* note 9. But, in light of the above-quoted language from *Southern Motor Carriers*, the legislative policy to limit competition is stated with sufficient particularity. *Cf. Carlson T.V. v. City of Marble*, 612 F.Supp. 669

(D.Minn.1985) (legislative policy allowing municipality to operate a cable system implied the right to exclude a private system).

**11.** It is undisputed that plaintiff was not certified.

**12.** *See Statesboro Telephone Co. v. Georgia Public Service Commission*, 235 Ga. 179, 219 S.E.2d 127 (1975).

thority. *Compare Cantor,* 428 U.S. at 598, 96 S.Ct. at 3121.

In sum, in light of the Georgia Legislature's stated intention to eliminate competition in the sale and lease of pay telephones and the PSC's active supervision of that policy, defendant is entitled to *Parker* immunity.

Therefore, defendant's motion for summary judgment is GRANTED as to plaintiff's antitrust claim. In addition, for the reasons stated above, the Court abstains from exercising its jurisdiction over plaintiff's section 1983 and state law claims. Consequently, these claims are DISMISSED WITHOUT PREJUDICE. This order resolves the case in its entirety, and the Clerk is DIRECTED to enter judgment accordingly.