Thomas W. CULBERTSON, Margaret Page Culbertson and Thomas W. Culbertson, Inc.; and S. Alton Smith, Susan T. Smith and Frances P. Moore

v.

COATS AMERICAN, INC.

Civil No. 94–CV–135–WCO.

United States District Court,
N.D. Georgia,
Gainesville Division.

Dec. 20, 1995.

David H. Pope, Carr Tabb & Pope, Atlanta, GA, for Thomas W. Culbertson, Margaret Page Culbertson, Thomas W. Culbertson, Inc., S. Alton Smith, Susan T. Smith, and Frances P. Moore.

Gregory W. Blount, Constangy Brooks & Smith, Atlanta, GA, Peter J. McGrath, Jr., Jonathan D. Oechsle, Moore & Van Allen, Charlotte, NC, for Coats American, Inc.

## ORDER

O'KELLEY, District Judge.

The captioned case is before the court for consideration of defendant's motion for summary judgment [37–1], plaintiffs' motion for partial summary judgment [39–1], and plaintiffs' motion to supplement the record [59–1]. Plaintiffs' motion to supplement the record is hereby GRANTED [59–1]. A hearing on the pending summary judgment motions was held before this court on Thursday, November 30, 1995.

## FACTS

Defendant Coats American, Inc. ("Coats American") operates a textile facility in Stephens County, Georgia (the "Facility"). Coats American discharges treated wastewater from the Facility into Eastanollee Creek in Toccoa, Georgia. Plaintiffs own land or maintain residences on Eastanollee Creek, downstream of the Facility.

The Federal Water Pollution Control Act, popularly known as the Clean Water Act, 33 U.S.C. §§ 1251 to 1387 (the "CWA"), prohibits the discharge of any pollutant into the navigable waters of the United States except in compliance with applicable provisions of the CWA. Authority to discharge pollutants in compliance with the CWA may be granted through a National Pollutant Discharge Elimination System Permit ("NPDES" permit), issued by the Administrator of the United States Environmental Protection Agency ("EPA"), or by a state under delegation of authority from EPA. The state of Georgia, through its Department of Natural Resources, Environmental Protection Division ("EPD"), has been delegated authority to issue NPDES permits in compliance with the applicable requirements of the CWA, the regulations issued thereunder, and applicable state law and state rules and regulations. The issuance of permits by the Director of EPD is authorized by the Georgia Water Quality Control Act, O.C.G.A. §§ 12–5–20 to 12–5–53 (the "GWQCA"). The rules and regulations promulgated pursuant to the GWQCA are found in the Rules of the Georgia Department of Natural Resources, Environmental Protection Division, Water Quality Control, Chapter 391–3–6 (the "Georgia Rules").

EPD issued to Coats American NPDES Permit No. GA 002038, effective December 30, 1988 (the "1988 Permit"). The 1988 Permit authorized Coats American's discharge into Eastanollee Creek, subject to the permit terms and conditions. The permit limited the concentration of copper in discharge from the Facility to 20.0 parts per billion ("ppb") daily maximum, limited the concentration of zinc to 83 ppb daily maximum, and prohibited the discharge of foam or floating solids in other than trace amounts. The copper and zinc limitations were applicable for the period beginning January 1, 1990 through November 1, 1992. The permit contained a schedule of interim measures to be taken prior to January 1, 1990, including the development of engineering specifications for any necessary wastewater treatment equipment upgrades and the submission of periodic progress reports to EPD. The 1988 permit also prohibited the discharge of toxic wastes in concentrations or combinations which are harmful to humans, fish or aquatic life.

The CWA requires each state to develop water quality standards which include standards for all toxic pollutants for which EPA has published criteria. EPA's list of toxic pollutants includes copper, zinc and lead. EPD has established water quality standards for copper, zinc and lead which are contained in Chapter 391–3–6.03 of the Georgia Rules. Section 304($l$) of the CWA, 33 U.S.C. § 1314($l$), requires each state to submit to EPA a list of waters within the state which, after application of certain effluent limitations, cannot reasonably be anticipated to attain the state's water quality standards due to toxic pollutants (the "304($l$) list"). Section 304($l$) then requires the state to identify point sources of toxic pollutants for each water segment identified on the 340($l$) list. For each identified point source, the state must establish an individual control strategy ("ICS") which the state determines will produce a reduction in the discharge of toxic pollutants sufficient, in combination with existing controls on point and nonpoint sources of pollution, to achieve the applicable water quality standard as soon as possible, but not

later than three years after the establishment of the ICS.

EPD listed Eastanollee Creek on Georgia's 304(*l*) list and identified the Coats American Facility as a source of copper and zinc which EPD believed to be impairing the water quality of the creek. EPD developed an ICS for the Coats American Facility which was embodied in a unilateral modification to the 1988 permit, effective February 2, 1990 (the "1990 Modification"). The discharge limit for copper was lowered to 9 ppb daily maximum, and the discharge limit for zinc was lowered to 82.8 ppb daily maximum for the period of December 31, 1991 to November 1, 1992. The 1990 Modification extended the final compliance deadline for copper and zinc from January 1, 1990 to December 31, 1991, and adjusted the interim schedule to reflect the new compliance date.

On May 15, 1990, in Administrative Order No. EPD–WQ–1626, EPD modified the schedule for performance of the interim measures required by the 1990 Modification. Order No. EPD–WQ–1626 did not modify the December 31, 1991 effective date of the copper and zinc concentration limits in the 1990 Modification. On October 24, 1991, Coats American and EPD entered into Consent Order No. EPD–WQ–1807 which further modified the schedule for performance of the interim measures contained in the 1990 Modification. Order No. EPD–WQ–1807 also set a new deadline of November 1, 1992 for compliance with the copper and zinc limitations of the 1988 permit, as modified by the 1990 Modification.

On October 30, 1992, EPD issued NPDES Permit No. GA 0002038, effective October 30, 1992 through September 30, 1996 (the "1992 permit"), to replace the expiring 1988 permit. The 1992 permit does not contain effluent concentration limits relating to copper or zinc for the period from October 30, 1992 through June 3, 1993. For the period from June 4, 1993 to September 30, 1996, the 1992 permit limits the concentration of lead in the Facility discharge to 10 ppb daily maximum and limits the concentration of zinc to 93 ppb daily maximum. The 1992 permit also requires Coats American to monitor the levels of lead in its discharge on a monthly basis, but does not contain a lead concentration limit. The permit continues the 1988 permit conditions relating to foam and to monthly monitoring and reporting to EPD. The 1992 permit contains a temperature limitation, prohibiting the discharge of wastewater warmer than 90°F or of wastewater which would increase the instream water temperature more than 5°F.

Like the 1988 permit, the 1992 permit prohibits the discharge of toxic wastes in concentrations which are harmful to humans, fish or aquatic life. The 1992 permit also requires Coats American to develop, upon EPD request, a program for "whole effluent biomonitoring" if EPD believes the Facility discharge includes toxic substances in concentrations or combinations harmful to humans, fish or aquatic life. EPD has requested that Coats American develop such a program, and Coats American has conducted bioassay testing of Facility discharge since February, 1993.

On the same date the 1992 permit was issued, EPD issued Administrative Order No. EPD–WQ–1942 which extended the compliance date for the 1992 permit temperature limitation to July 1, 1993. Order No. EPD–WQ–1942 also required Coats American to determine whether more than trace amounts of foam were occurring in Eastanollee Creek as a result of the Facility discharge, and required Coats American to have an independent consultant experienced in fish health assessment conduct a study of fisheries in Eastanollee Creek and deliver proposals for any upgrades of the Facility's discharge necessary for compatibility with a balanced fish population in Eastanollee Creek.

On July 1, 1993, EPD issued Administrative Order No. EPD–WQ–2012 which set January 1, 1995 as the date by which Coats American was required to either comply with the copper and zinc effluent limitations of the 1992 permit, or submit a final report proposing site-specific effluent limitations. The order also set forth a schedule of required interim measures. On August 18, 1993, on motion of EPD, the Superior Court of Stephens County, Georgia, entered judgment against Coats American in accordance with Order No. EPD–WQ–2012. On December

28, 1994, EPD issued Amendment No. 1 to Order No. EPD–WQ–2012, which revised the interim schedule and extended the final compliance date to January 1, 1997. On March 2, 1995, on motion of EPD, the Superior Court of Stephens County entered judgment against Coats American in accordance with Amendment No. 1 to Administrative Order No. EPD–WQ–2012.

Plaintiffs filed the instant action on November 16, 1994, seeking civil penalties, injunctive relief, costs and attorney's fees pursuant to the citizen suit provision of the CWA. *See* 33 U.S.C. § 1365. Plaintiffs also seek damages for state law claims of trespass, nuisance, negligence, and negligence per se. Defendant moved this court for summary judgment as to all of plaintiffs' claims. Plaintiffs seek summary judgment as to their claims under the CWA.

## LEGAL ANALYSIS

### I. *Summary Judgment Standard*

Summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Only those claims for which there is no need for a factual determination and for which there is a clear legal basis are properly disposed of through summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

It is well-settled that a court evaluating a summary judgment motion must view the evidence in the light most favorable to the non-movant. *See, e.g., Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir.1988); *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir.1986), *reh'g denied*, 815 F.2d 66 (11th Cir.1987). To survive a motion for summary judgment, the non-moving party need only present evidence from which the trier of fact might return a verdict in his favor. *Samples*, 846 F.2d at 1330. However, Rule 56, "[b]y its very terms, ... provides that the mere existence of *some* alleged factual dispute between the parties will not

defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). The materiality of facts is governed by the relevant substantive law in the case. *Id.* at 248, 106 S.Ct. at 2510. A dispute is genuine if the evidence is such that the factual issues "may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511.

Consideration of a summary judgment motion does not lessen the burden on the non-moving party: the non-moving party still bears the burden of coming forth with sufficient evidence on *each element* that must be proved. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990) (emphasis in original); *see Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53. In *Earley*, the Eleventh Circuit further emphasized:

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.... Rule 56© mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case.... In such circumstances, there can be no genuine issue of material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.... If the evidence is *merely colorable*, or is *not significantly probative*, summary judgment may be granted.

*Id.* (emphasis in original) (citations omitted).

### II. *Burford Abstention*

■ Defendant Coats American argues that this court should dismiss plaintiffs' claims under the abstention doctrine established in *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). The *Burford* abstention doctrine provides that

> [w]here timely and adequate state-court review is available, a federal court sitting

in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*New Orleans Pub. Serv., Inc. v. Council of New Orleans,* 491 U.S. 350, 361, 109 S.Ct. 2506, 2514, 105 L.Ed.2d 298 (1989) (quoting *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)). The *Burford* abstention doctrine is concerned with protecting complex state administrative processes from undue federal interference. *Id.* at 362, 109 S.Ct. at 2515. The CWA provides for the enforcement of federal standards through the combined efforts of state agencies, federal agencies, and private citizens. As discussed more fully below, the CWA itself precludes citizen suits in certain instances of state or federal action. *See* 33 U.S.C. §§ 1319(g)(6)(A), 1365(b). The statutory scheme thus contemplates citizen suits as a *supplement* to state government action. The *Burford* abstention doctrine is therefore not implicated by the present citizen suit under the CWA. *Student Pub. Interest Research Group of New Jersey, Inc. v. P.D. Oil & Chem. Storage, Inc.,* 627 F.Supp. 1074, 1085 (D.N.J.1986); *Brewer v. City of Bristol,* 577 F.Supp. 519, 523–24 (E.D.Tenn.1983).

### III. Exhaustion of Administrative Remedies

■ Coats American next argues that it is entitled to summary judgment because plaintiffs' claims are barred due to an alleged failure to participate in the state administrative process prior to filing suit in this court. Defendant has cited no caselaw to support this proposition. The doctrine of exhaustion of administrative remedies requires that a plaintiff first seek review of a challenged agency action within the agency itself, in order to allow the agency to resolve the dispute and obviate the need for judicial relief. *Natural Resources Defense Council, Inc. v. Train,* 510 F.2d 692, 703 (D.C.Cir. 1975). The CWA provides that a citizen suit cannot be brought prior to sixty days after the plaintiff has given notice of the alleged CWA violation to EPA, to the state in which the violation occurs, and to the alleged violator. 33 U.S.C. § 1365(b). The sixty-day notice provision allows the agency to act prior to federal court involvement, thus serving as a statutory exhaustion requirement. *C.f. Susquehanna Valley Alliance v. Three Mile Island Nuclear Reactor,* 619 F.2d 231, 243 (3d Cir.1980), *cert. denied, General Pub. Utilities Corp. v. Susquehanna Valley Alliance,* 449 U.S. 1096, 101 S.Ct. 893, 66 L.Ed.2d 824 (1981); *Natural Resources Defense Council, Inc.,* 510 F.2d at 703. The parties do not dispute that plaintiffs in the instant case fulfilled the sixty-day notice requirement. Accordingly, plaintiffs' claims are not barred by any alleged failure to participate in the state administrative process.

### IV. Preclusion by Administrative Action

■ Citizen suits under the CWA are precluded where "a State has commenced and is diligently prosecuting an action under a State law comparable to this subsection." 33 U.S.C. § 1319(g)(6)(A)(ii). "This subsection" refers to section 1319(g) which authorizes the imposition of administrative penalties. Coats American contends that the various administrative orders which EPD has issued relating to its copper and zinc discharge constitute diligent prosecution by the state so as to bar plaintiffs' action as it relates to copper and zinc.

■ The court recognizes that citizen suits under the CWA are intended to "supplement rather than to supplant" governmental action, and are appropriate only when government agencies fail to exercise their enforcement responsibility. *Gwaltney v. Chesapeake Bay Found.,* 484 U.S. 49, 60, 108 S.Ct. 376, 383, 98 L.Ed.2d 306 (1987). The focus of the statutory bar to citizen suits is on whether the government has taken and diligently pursued corrective action which seeks to remedy the same violations as duplicative citizen action. *North & South Rivers*

*Watershed Ass'n v. Town of Scituate,* 949 F.2d 552, 556 (1st Cir.1991). The Supreme Court has recognized that a citizen suit would be inappropriate where the government agreed not to assess penalties on the condition that the violator take "some extreme corrective action" that it would not otherwise be obliged to take. *Gwaltney,* 484 U.S. at 60–61, 108 S.Ct. at 383. Courts have deferred to administrative action and disallowed citizen suits where the preclusive administrative action involves the imposition of penalties or other burdens on the purported defendant. *See, e.g., Arkansas Wildlife Fed'n v. ICI Americas, Inc.,* 29 F.3d 376 (8th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1094, 130 L.Ed.2d 1062 (1995) (finding an administrative penalty action constitutes diligent prosecution where several financial penalties were imposed); *North & South Rivers Watershed Ass'n, supra* (finding diligent prosecution where state orders required, *inter alia,* the expenditure by defendant of close to one million dollars to plan a new treatment facility).

In the instant case, EPD has taken action relating to defendant's violations of the copper and zinc limits in its 1988 and 1992 permits. However, EPD's actions fundamentally consist of a series of extensions of compliance deadlines such that EPD has not yet required defendant to meet the copper and zinc standards of its NPDES permit.[1] EPD has therefore not diligently prosecuted Coats American under the CWA, and plaintiffs' suit regarding defendant's copper and zinc discharge is not barred under 33 U.S.C. § 1319(g)(6)(A).

### V. *Preclusion by Judicial Action*

■ The CWA also precludes citizen suits if the state has commenced and is diligently prosecuting a civil or criminal action in a federal or state court to require compliance with the standard, limitation, or order that is the subject of the citizen suit. 33 U.S.C. § 1365(b)(1). Defendant argues that the judicial orders entered by the Stephens County, Georgia Superior Court at the request of

EPD constitute court actions which bar plaintiffs' claims relating to defendant's copper and zinc discharge. Section 1365 precludes citizen suits when the state "has commenced an action 'to require compliance.'" *See Gwaltney,* 484 U.S. at 60 n. 3, 108 S.Ct. at 383 n. 3 (emphasis in original). As discussed above, in the instant case, EPD has not acted to require compliance with the copper and zinc limits, but has merely extended defendant's compliance deadlines. "[EPD] has examined the matter and chosen not to seek enforcement of the standards set forth in the ... permit. Therefore, plaintiffs' [citizen] suit is appropriate." *Public Interest Research Group of New Jersey, Inc. v. Rice,* 774 F.Supp. 317, 327 (D.N.J.1991). As a matter of law, the court finds that EPD's actions in the instant case do not constitute diligent prosection to require compliance with the copper and zinc limits in defendant's permit, and thus do not preclude plaintiffs' suit under 33 U.S.C. § 1365(b)(1).

### VI. *Copper and Zinc; 1988 permit*

■ Section 505 of the CWA authorizes citizen suits to enforce a CWA "effluent standard or limitation." 33 U.S.C. § 1365(a)(1). Enforceable effluent standards or limitations include those contained in NPDES permits. 33 U.S.C. § 1365(f)(6). Plaintiffs allege that defendant has violated the CWA because it has discharged copper and zinc in excess of the limits contained in its 1988 permit. During the period covered by the numeric limitations in the 1988 permit (January 1, 1990 through November 1, 1992), the discharge from Coats American's facility exceeded the copper limitations in the 1988 permit in at least 32 months, and exceeded the zinc limitations in at least 14 months. *See* Plaintiffs' Motion for Partial Summary Judgment, app. at Ex. 11.

Coats American does not dispute the concentration of copper and zinc in its discharge. Instead, Coats American argues that it has not violated the 1988 permit because EPD validly extended the compliance date for copper and zinc limits to November 1, 1992, the

---

1. EPD has also adjusted interim compliance schedules to accommodate the extended compliance deadlines.

expiration date of the 1988 permit. Through the 1990 Modification, EPD extended the compliance deadline for copper and zinc limits to December 31, 1991. EPD again extended the compliance deadline to November 1, 1992 through Consent Order EPD–WQ–1807. Therefore, EPD never required Coats American to meet the copper and zinc limits contained in the 1988 permit.

Plaintiffs contend that the 1990 Modification and Order No. EPD–WQ–1807 do not operate as a bar to citizen suit for the copper and zinc violations. The procedures which EPA must follow in modifying an NPDES permit are found in 40 C.F.R. § 122.62. States are required to adopt equivalent procedures for permit modification. 40 C.F.R. § 123.25. In order to modify a permit so as to affect a final compliance date, the Georgia Rules require the Director of EPD to follow procedures allowing for public notice and hearing. Georgia Rules, Chapter 391–3–6–.06(12). In issuing the 1990 Modification and Order No. EPD–WQ–1807, the Director of EPD did not follow the public modification process.[2] Thus, the 1990 Modification and Order No. EPD–WQ–1807 are not valid "modifications" of the copper and zinc limits in the 1988 permit so as to preclude the enforcement of the original permit terms by citizen suit.[3] Instead, the deadline extensions contained in the 1990 Modification and Order No. EPD–WQ–1807 constitute statements by EPD as to how it plans to exercise its prosecutorial discretion. *See Citizens for a Better Environ. v. Union Oil Co.*, 861 F.Supp. 889, 903 (N.D.Cal.1994). EPD's deadline extensions thus do not serve as a defense to plaintiffs' suit. Accordingly, plaintiffs are entitled to summary judgment as to defendant's liability for violation of the discharge limitations for copper and zinc in the 1988 permit.

### VII. *Copper and Zinc; 1992 Permit*

The 1992 permit contains discharge limits for copper and zinc for the period beginning June 4, 1993 through September 30, 1996. During the period covered by the 1992 permit, Coats American violated the copper limitation in every month through May, 1995. During the same period, Coats American violated the zinc limitation in April 1994, July 1994, and April 1995. Plaintiffs' Motion for Partial Summary Judgment, app. at Ex. 11, 12.

Through Administrative Order EPD–WQ–2012, Amendment No. 1 to Administrative Order EPD–WQ–2012, and the court orders entered thereupon, EPD has extended the compliance date for the copper and zinc limits in the 1992 permit until January 1, 1997. As discussed above, these extensions are only statements of prosecutorial discretion and do not modify the 1992 permit so as to provide a defense to plaintiffs' suit. Georgia Rules, Chapter 391–3–6.06(12); *Citizens for a Better Environ.*, 861 F.Supp. at 903. Accordingly, plaintiffs are entitled to summary judgment as to Coats American's liability for violation of the copper and zinc limitations in its 1992 permit.

### VIII. *Instream Water Quality Standards; Copper, Zinc and Lead*

Plaintiffs claim that Coats American has also violated the CWA by discharging

---

**2.** Defendant concedes this in paragraph 24 of its "Response of Coats American to Plaintiffs' Statement of Material Facts."

**3.** Defendant argues that the requirements of Chapter 391–3–6.06(12)(c) apply only to modifications requested by permittees, and that because the 1990 Modification was a unilateral order of EPD which actually made the copper and zinc limits more stringent, the 1990 Modification is instead governed by Chapter 391–3–6.06(10)(a). Chapter 391–3–6.06(10)(a) provides:

> Any person who obtains an NPDES permit ... but is not in compliance with applicable effluent standards or limitations or other requirements contained in such permit *at the time same is issued,* shall be required to achieve compliance with such standards and limitations or other requirements in accordance with a schedule of compliance as set forth in such permit, or Order by the Director, or in the absence of a schedule of compliance, by the date set forth in such permit which the Director has determined to be the shortest reasonable period of time necessary to achieve such compliance, but in no case later than an applicable statutory deadline.

(emphasis added). Thus, Chapter 391–3–6.06(10) applies only to compliance schedules issued at the same time as a permit, and is not applicable to the 1990 Modification.

copper, zinc and lead in violation of Georgia instream water quality standards. After careful consideration, the court is of the opinion that genuine issues of material fact are disputed in regard to this claim. Accordingly, neither party is entitled to summary judgment as to plaintiffs' CWA claim for violation of Georgia instream water quality standards.

## IX. *Toxicity*

■■■ The 1988 and 1992 permits both prohibit the discharge of "toxic wastes in concentrations or combinations which are harmful to humans, fish or aquatic life." The permits further provide that

> [i]f toxicity is suspected, [EPD] may require the permittee to develop a program for whole effluent biomonitoring.... If toxicity is found in the permittee's effluent, the permittee shall, within 90 days of written notification by EPD, submit a Toxicity Reduction Evaluation (TRE) plan to [EPD]. The TRE plan shall detail the action the permittee will implement to eliminate toxicity.

Plaintiffs have produced evidence of toxicity in Coats American's discharge. However, EPD has requested that Coats American develop a program for whole effluent biomonitoring, and Coats American has in fact developed such a program. Coats American has conducted bioassay testing of its discharge at least quarterly since February, 1993. Moreover, Coats American has produced evidence that it is preparing to submit a TRE plan to EPD. Thus, Coats American has complied with the enforcement response contemplated by EPD with regard to the toxicity requirements of the permits. The court therefore concludes that Coats American is not in violation of the toxicity provisions of its NPDES permits. Accordingly, Coats American is entitled to summary judgment as to plaintiffs' claims for violations of the toxicity provisions of the 1988 and 1992 permits.

## X. *Temperature*

■■■ Plaintiffs claim that Coats American has committed ongoing violations of the temperature restrictions contained in the 1992 permit. After careful consideration, the court is of the opinion that genuine issues of material fact are disputed in regard to this claim. Accordingly, neither party is entitled to summary judgment as to plaintiffs' CWA claim for violation of the temperature provisions of the 1992 permit.

## XI. *Foam*

■■■ Plaintiffs claim that Coats American has committed ongoing violations of the 1988 and 1992 permit provisions which prohibit the discharge of visible foam in other than trace amounts. After careful consideration, the court is of the opinion that genuine issues of material fact are disputed in regard to this claim. Accordingly, neither party is entitled to summary judgment as to plaintiffs' CWA claim for violation of the foam provisions of the 1988 and 1992 permits.

## XII. *Color*

■■■ Both the 1988 and 1992 permits provide that Coats American's discharge into Eastanollee Creek is authorized "[i]n compliance with the provisions of the Georgia Water Quality Control Act (Georgia Laws 1964, p. 416, as amended), hereinafter called the 'State Act,' the Federal Water Pollution Control Act, as amended (33 U.S.C. 1251 et seq.), hereinafter called the 'Federal Act,' and the Rules and Regulations promulgated pursuant to each of these Acts." Plaintiffs have produced evidence that this provision is intended to make compliance with the Georgia Rules a permit requirement. Zurow dep. at 126–29; Word dep. at 75. Defendants have conceded the validity of this interpretation. Response of Coats American, Inc. to Plaintiffs' Statement of Material Facts ¶ 12. The CWA authorizes citizen suits for the enforcement of all conditions of NPDES permits. 33 U.S.C. §§ 1365(a)(1)(A), 1365(f)(6); *Northwest Envtl. Advocates v. City of Portland,* 56 F.3d 979, 986 (9th Cir.1995). Plaintiffs may therefore bring suit under the CWA for violations of the Georgia Rules.

■■■ The Georgia Rules require that all waters be free from discharge which produces "turbidity, color, odor or other objectionable conditions which interfere with legitimate water uses." Georgia Rules, Chapter 391–3–6.06(5)(c). Plaintiffs have produced

evidence that the discharge from Coats American's Facility discolors Eastanollee Creek so as to interfere with legitimate aesthetic uses of the water. Defendant has not produced viable evidence to the contrary. Accordingly, plaintiffs are entitled to summary judgment as to their CWA claim for violation of the Georgia Rules proscription of discharge which produces discoloration.

### XIII. *Failure to Comply with Administrative Order No. EPD–WO–1942*

■ Plaintiffs allege that Coats American has violated the CWA in failing to timely comply with the provision of Administrative Order No. EPD–WQ–1942 which requires Coats American to submit the results of a fish study and any related upgrade proposals. The CWA authorizes citizen suits against "any person ... who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation." 33 U.S.C. § 1365(a). The definition of "effluent standard or limitation under this chapter" includes federally mandated standards or limits and NPDES permit terms. 33 U.S.C. § 1365(f). The definition is not so expansive as to include EPD's order requiring Coats American to conduct a fish study of Eastanollee Creek. Plaintiffs therefore may not bring suit under the CWA for defendant's failure to timely comply with EPD's order to submit the results of a fish study and any related upgrade proposals. Accordingly, defendants are entitled to summary judgment as to plaintiffs' claim for failure to comply with Administrative Order EPD–WQ–1942.

### XIV. *State Law Claims*

■ Coats American argues that plaintiffs' state law claims of negligence, strict liability, trespass and nuisance are barred by the statute of limitations. Under Georgia law, a four year statute of limitations applies to actions for trespass or damage to realty. O.C.G.A. § 9–3–29. Coats American contends that, because its discharge has not materially changed since 1988, any cause of action relating to its discharge accrued in 1988 and thus plaintiffs' complaint, filed November 16, 1994, is time-barred. The court disagrees. Plaintiffs' claims relate to continuing, abatable acts by defendant. Therefore, each continuing, injurious act gives rise to a new cause of action. *City of Columbus v. Myszka*, 246 Ga. 571, 272 S.E.2d 302, 305 (1980); *Shaheen v. G & G Corp.*, 230 Ga. 646, 198 S.E.2d 853, 855 (1973). Defendant cites to Georgia caselaw which limits recovery under a continuing tort theory to claims for personal injury. *Corporation of Mercer Univ. v. National Gypsum Co.*, 258 Ga. 365, 368 S.E.2d 732, 733 (1988). However, that caselaw relates to recovery under a products liability theory of failure to warn, and thus is not applicable to the case at bar. In the instant case, the statute of limitations only precludes plaintiffs' recovery for injurious acts which occurred more than four years prior to the filing of their suit.

### CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is hereby GRANTED IN PART and DENIED IN PART [37–1]. Plaintiffs' motion for partial summary judgment is hereby GRANTED IN PART and DENIED IN PART [39–1]. To summarize:

(1) As to plaintiffs' CWA claims for violations of the copper and zinc limits in the 1988 and 1992 permits, plaintiffs' motion for summary judgment is hereby GRANTED and defendant's motion for summary judgment is hereby DENIED.

(2) As to plaintiffs' CWA claims for violations of the Georgia instream water quality standards, both plaintiffs' and defendant's motions for summary judgment are hereby DENIED.

(3) As to plaintiffs' claims for violations of the toxicity provisions of the 1988 and 1992 permits, defendant's motion for summary judgment is hereby GRANTED and plaintiffs' motion for summary judgment is hereby DENIED.

(4) As to plaintiffs' CWA claims relating to temperature and foam, both plaintiffs' and defendant's motions for summary judgment are hereby DENIED.

(5) As to plaintiffs' CWA claim for violation of the Georgia Rules regarding water color, plaintiffs' motion for summary judgment is hereby GRANTED and defendant's motion for summary judgment is hereby DENIED.

(6) As to plaintiffs' CWA claim for failure to comply with Administrative Order No. EPD–WQ–1942, plaintiffs' motion for summary judgment is hereby DENIED and defendant's motion for summary judgment is hereby GRANTED.

(7) Defendant's motion for summary judgment as to plaintiffs' state law claims is hereby DENIED.

IT IS SO ORDERED.