**COLLEGE PARK HOLDINGS, LLC, Plaintiff,**

v.

**RACETRAC PETROLEUM, INC., Defendant,**

v.

**Camden Oil Company, LLC et al., Third–Party Defendants.**

No. CIV.A.1:01–CV–1128–B.

United States District Court, N.D. Georgia, Atlanta Division.

Oct. 16, 2002.

James Daniel Levine, Russell, James Rogers, McKenna, Long & Aldridge, Atlanta, GA, Craig A. Sturtz, Kendra S. Sherman, Vincent Atriano, Squire, Sanders & Dempsey, Columbus, OH, for Plaintiff.

Peter M. Degnan, Robert Douglas Mowrey, Daniel Niles Esrey, David M. Meezan, ALston & Bird, Atlanta, GA, Daniel S. Reinhardt, Douglas Alton Henderson, Debra S. Cline, Troutman Sanders, Atlanta, GA, for Defendant.

### ORDER

MARTIN, District Judge.

This action, alleging violations of various federal and state environmental laws, is before the court on: (1) RaceTrac Petroleum, Inc.'s motion for leave to file motion to dismiss or, in the alternative, to stay action [Doc. Nos. 79–1, 79–2, & 79–3]; (2) RaceTrac Petroleum, Inc.'s motion for leave to file motion to dismiss count one of plaintiff's amended complaint [Doc. Nos. 80–1 & 80–2]; (3) RaceTrac Petroleum, Inc.'s motion for leave to file motion for judgment

on the pleadings [Doc. No. 84–1]; and (4) Merchant Investment Group, Inc.'s motion to extend time to answer third-party complaint [Doc. No. 77–1].

I. *Factual and Procedural Background*

Between August 1980 and December 1998, RaceTrac Petroleum, Inc. ("RaceTrac") owned real property in College Park, Georgia on which it operated a gasoline service station known as RaceTrac # 279 (the "Service Station Property"). The Service Station Property contained four 12,000 gallon underground storage tanks ("USTs"). Plaintiff College Park Holdings, LLC ("CPH") currently owns real property adjacent to the Service Station Property on which an unaffiliated entity operates a Radisson Hotel (the "Hotel Property").

The events leading to this litigation began in 1992. At that time, RaceTrac performed several environmental assessments of the Service Station Property. Thereafter, in 1993, RaceTrac notified the Georgia Environmental Protection Division ("EPD") that a release had occurred from its USTs. As a result, EPD undertook an inspection of the Service Station Property, and RaceTrac began to monitor and repair its UST system. CPH then inspected its own property, discovering the presence of benzene and other petroleum contaminants.

Concluding that RaceTrac was the most probable source of the groundwater contamination on the Hotel Property, in September 1996, CPH's legal counsel sent RaceTrac a letter, alleging a "suspected release from the RaceTrac facility." By letter dated November 12, 1996, EPD notified RaceTrac that the agency had "become aware of a suspected release of petroleum from an UST" at the Service Station Property. Since that time, RaceTrac, at EPD's request, has performed various environmental investigative and remedial activities with respect to the UST system. These activities include RaceTrac's submission to EPD of a Corrective Action Plan–Part A ("CAP–Part A") and closure of a diesel UST.

In March 1999, CPH undertook another environmental investigation at the Hotel Property. During this investigation, CPH found free-phase petroleum product in the groundwater on the Hotel Property. On April 28, 1999, CPH informed EPD and Camden Oil Company, the operator of the Service Station Property at the time, of this discovery. RaceTrac was informed of this discovery in August 1999 by EPD. The agency alleged that RaceTrac was responsible for the free product and directed RaceTrac to submit another Corrective Action Plan ("CAP–Part B") by October 8, 1999.

After receiving this directive, RaceTrac attempted to obtain access to the Hotel Property in order to perform the environmental inspection requested by EPD. However, CPH denied RaceTrac access to the Hotel Property. Because of this access denial, RaceTrac did not submit the CAP–Part B until August 15, 2001. Although required to do so by EPD, this submission did not address any free product present on the Hotel Property. During this time, EPD issued RaceTrac two violation notices for failure to follow EPD directives.

Also during this time, on March 28, 2001, CPH sent a letter to RaceTrac providing notice of its intent to sue under the federal Resource Conservation and Recovery Act ("RCRA"). The correspondence provided that, after the expiration of sixty days, CPH intended to file a citizen suit claim against RaceTrac under 42 U.S.C. § 6972(a)(1)(A). The notice letter premised the RCRA litigation on alleged violations of Georgia's underground storage tank management regulations. Despite

the sixty-day delay period required by RCRA after CPH's notice, on May 3, 2001, CPH filed suit alleging six causes of action under Georgia law. On June 7, 2001, after the expiration of sixty days, CPH amended its complaint, adding a claim under the citizen suit provision of RCRA.

Meanwhile, EPD continued to correspond with RaceTrac regarding the UST system and RaceTrac's remedial efforts. Finally, in October 2001, EPD approved RaceTrac's CAP–Part B. However, after additional discussions between the parties, EPD requested further remediation by RaceTrac. Being unable to reach an agreement about the appropriate course of action, EPD issued a formal administrative order to RaceTrac on September 16, 2002. In this order, EPD alleged violations of the Georgia Underground Storage Tank Act and accompanying regulations. Ga. Code Ann. §§ 12–13–1, *et seq.* (2001). ·EPD also directed RaceTrac to conduct remedial activities. Believing that EPD's order is unwarranted, RaceTrac filed an administrative appeal of the order.

In addition to EPD's actions, the litigation between CPH and RaceTrac is set for a bench trial on October 22, 2002. Faced with defending this litigation at the same time as appealing EPD's administrative order, RaceTrac filed two motions to dismiss this litigation [1] [Doc. Nos. 79–2 & 80–2] and a motion for judgment on the pleadings [Doc. No. 84–1]. The court now considers these motions.

## II. *RaceTrac's Motion to Dismiss or, in the Alternative, to Stay Action*

As its first argument, RaceTrac asserts that the court should exercise its discretion under the primary jurisdiction and *Burford* abstention doctrines and refrain from adjudicating CPH's citizen suit claim un-

der 42 U.S.C. § 6972(a)(1)(A). RaceTrac believes that such abstention is warranted in light of EPD's September 16, 2002 administrative order and RaceTrac's subsequent appeal of that order. According to RaceTrac, abstention is proper because: (1) the court is being called upon to decide factual issues not within the conventional experience of judges; (2) RaceTrac could be subjected to conflicting orders of the court and EPD; (3) relevant EPD proceedings have been initiated; (4) EPD has diligently attempted to resolve the issues raised by CPH's RCRA claim; (5) the suit involves difficult problems of state law bearing on policies of substantial public import; and (6) exercise of federal jurisdiction in this action would disrupt state efforts to establish a coherent policy regarding UST regulation.

### A. *Burford Abstention and Primary Jurisdiction Doctrines*

 The Supreme Court first articulated the *Burford* abstention doctrine in *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). In a later case, the Supreme Court summarized *Burford* abstention as follows:

Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) where there are difficult questions of state law bearing on policy questions of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent poli-

---

**1.** RaceTrac filed each of these motions in conjunction with a motion for leave to file the motion to dismiss. The court GRANTS Race-

Trac's motions for leave to file the motions to dismiss and considers the motions to dismiss on their merits.

cy with respect to a matter of substantial public concern.

*New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans,* 491 U.S. 350, 361, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (citations and internal quotations omitted). The purpose of *Burford* abstention is to "protect[ ] complex state administrative processes from undue federal interference." *Id.* at 362, 109 S.Ct. 2506; *Siegel v. Lepore,* 234 F.3d 1163, 1173 (11th Cir. 2000).

■ Because "abstention on *Burford* grounds is a refusal to exercise federal jurisdiction in an entire class of cases, it is perhaps the most potent device in [the] area of [abstention]." *Nasser v. City of Homewood,* 671 F.2d 432, 440 (11th Cir. 1982). However, as is true with other types of abstention, "the decision about when to abstain [under *Burford* ], although circumscribed, remains primarily up to the district court." *Coin Call, Inc. v. S. Bell Tel. & Tel. Co.,* 636 F.Supp. 608, 610 (N.D.Ga.1986) (Shoob, J.). In the Eleventh Circuit, a district court's decision to abstain will only be reversed upon a showing of abuse of discretion. *Rindley v. Gallagher,* 929 F.2d 1552, 1554 (11th Cir. 1991); *S. Ry. Co. v. State Bd. of Equalization,* 715 F.2d 522 (11th Cir.1983).

■ Since the district court has discretion in abstaining, "there is, of course, no doctrine requiring abstention merely because resolution of a federal question may result in the overturning of a state policy." *Zablocki v. Redhail,* 434 U.S. 374, 380, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978); *see also Rindley,* 929 F.2d at 1556; *Culbertson v. Coats Am., Inc.,* 913 F.Supp. 1572, 1578 (N.D.Ga.1995) (O'Kelley, J.). As such, although the ambit of *Burford* abstention has not been neatly defined, abstention cannot be invoked solely because a federal court action involves a state's handling of its own affairs. *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706,

116 S.Ct. 1712, 135 L.Ed.2d 1 (1996); *S. Ry. Co.,* 715 F.2d at 527. Thus, in exercising its discretion, the court must be mindful of "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); *see also Quackenbush,* 517 U.S. at 706, 116 S.Ct. 1712; *Coin Call, Inc.,* 636 F.Supp. at 610.

■ As with the concept of *Burford* abstention, the primary jurisdiction doctrine is similarly concerned with protecting the administrative process from judicial interference. *United States v. W. Pac. R.R. Co.,* 352 U.S. 59, 63, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956); *Boyes v. Shell Oil Prods. Co.,* 199 F.3d 1260, 1265 (11th Cir. 2000); *Columbia Gas Transmission Corp. v. Allied Chem. Corp.,* 652 F.2d 503, 519 (5th Cir.1981). It is "a doctrine specifically applicable to claims properly cognizable in [federal] court that contain some issue within the special competence of an administrative agency." *Reiter v. Cooper,* 507 U.S. 258, 268, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993) (citations omitted). Even though the court is authorized to adjudicate the claim before it, the primary jurisdiction doctrine dictates that a specialized agency be given the opportunity to resolve the dispute. *W. Pacific R.R. Co.,* 352 U.S. at 64, 77 S.Ct. 161. Accordingly, "the judicial process is suspended pending referral of such issues to the administrative body for its views." *Id.; see also Smith v. GTE Corp.,* 236 F.3d 1292, 1298 (11th Cir. 2001); *Loggerhead Turtle v. Volusia County Council,* 896 F.Supp. 1170, 1175 (M.D.Fla.1995), *aff'd on appeal,* 148 F.3d 1231 (11th Cir.1998). The main justifications for the rule of primary jurisdiction are the expertise of the agency deferred to and the need for a uniform interpretation of a statute or regulation. *Nader v. Alle-*

*gheny Airlines, Inc.,* 426 U.S. 290, 303, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976); *Boyes,* 199 F.3d at 1265; *Miss. Power & Light Co. v. United Gas Pipe Line Co.,* 532 F.2d 412 (5th Cir.1976). However, "courts should be reluctant to invoke the doctrine of primary jurisdiction, which often, but not always, results in added expense and delay to the litigants." *Id.* at 419. In the context of cases involving state administrative schemes, the *Burford* abstention and primary jurisdiction doctrines are "different labels for the same thing." *Id.* at 1265–66; *see also PMC, Inc. v. Sherwin–Williams Co.,* 151 F.3d 610, 619 (7th Cir. 1998); *Brogdon ex rel. Cline v. Nat'l Healthcare Corp.,* 103 F.Supp.2d 1322, 1343 (N.D.Ga.2000) (Murphy, J.).

### B. *Application to RaceTrac's Contentions*

■ Applying the foregoing principles to RaceTrac's arguments against federal jurisdiction, the court admits that determinations regarding the contamination of groundwater and appropriate remediation techniques are not dealt with by the courts on a daily basis. That fact alone, however, is not a sufficient basis for denying jurisdiction. *Miss. Power & Light Co.,* 532 F.2d at 412. It must be shown that courts in general lack the competence to efficiently and effectively resolve the issue. *Id.* Other courts have held, and this court agrees, that questions imposed by environmental statutes are not so esoteric or complex as to foreclose their consideration by the judiciary. *Culbertson,* 913 F.Supp. at 1578. Congress has even said so explicitly: "Enforcement of pollution regulations is not a technical matter beyond the competence of the courts." S.Rep. No. 92–414, *reprinted in* 1972 U.S.C.C.A.N. 3668, 3747.

Nor is it a foregone conclusion that any order of this court will interfere or actually conflict with EPD's resolution of the issue. There is ample documentation of the agency's institutional attitudes and remediation

expectations with respect to the Service Station and Hotel Properties to permit this court to fashion appropriate non-conflicting relief. *Miss. Power & Light Co.,* 532 F.2d at 419. Any order of this court would also not come as a surprise to the agency, as EPD is well-aware of this suit and of the potential for court-ordered remediation. Further, given the on-going nature of the struggle between EPD and Race-Trac, court-ordered relief might even be characterized as welcome. *See Wilson v. Amoco Corp.,* 989 F.Supp. 1159 (D.Wyo. 1998)

The likelihood of conflict can be further reduced if the court considers carefully the agency's previous and current orders before it orders any relief itself. *Miss. Power & Light Co.,* 532 F.2d at 419. Additionally, the court could ask for EPD comments before fashioning any finalized judgment, or the court could modify any injunctive relief upon a decision of the agency regarding the September 16, 2002 EPD order. *Id.* Thus, the court can design effective, non-conflicting injunctive remedies by eliciting the expertise of the involved agencies while maintaining the court's substantial enforcement powers. *Id.* As such, preserving jurisdiction in this court hastens the remediation and clean-up of an environmental hazard, allowing an expeditious resolution of the dispute. *Id.*

There is an additional, overriding reason for the court to hear RCRA cases despite their supposed unique nature: Congress has told the court to do so. 42 U.S.C. § 6972(a)(1)(A). In fact, RCRA provides for the judicial enforcement of environmental standards through the combined efforts of state agencies, federal agencies, and private citizens. 42 U.S.C. § 6972. RCRA explicitly empowers citizens to enforce its provisions and precludes citizen suits in certain instances of state or federal

action. 42 U.S.C. § 6972(b)(1)(B). The statutory scheme thus contemplates citizen suits as a supplement to state government action, and the court could not, in good faith, unilaterally strip United States citizens of rights given them by their government. *See Wilson,* 989 F.Supp. at 1170; *Cal. Sportfishing Prot. Alliance v. City of W. Sacramento,* 905 F.Supp. 792, 807 (E.D.Cal.1995).

In short, RaceTrac would have this court wield the tools of *Burford* abstention and primary jurisdiction to surrender its statutorily imposed duty to entertain and decide this action. Such an application of these doctrines would do injustice to the long-standing principle that courts of the United States "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the Constitution." *Cohens v. Va.,* 19 U.S. (6 Wheat.) 264, 403, 5 L.Ed. 257 (1821). Accordingly, the court declines to apply the *Burford* abstention and primary jurisdiction doctrines to the present citizen suit under RCRA. *See Culbertson,* 913 F.Supp. at 1578. Therefore, RaceTrac's motion to dismiss or, in the alternative, to stay action [Doc. Nos. 79–2 & 79–3] is hereby DENIED.

### III. *RaceTrac's Motion to Dismiss Count One of Plaintiff's Amended Complaint*

In its second motion, RaceTrac argues that CPH's citizen suit claim under RCRA must be dismissed for lack of subject matter jurisdiction. RaceTrac reasons that such action is appropriate because the notice letter CPH sent to RaceTrac pursuant to 42 U.S.C. § 6972(b)(1)(A) fails to comport with applicable statutory and regulatory notice requirements. RaceTrac further asserts that compliance with such requirements is a jurisdictional prerequisite to a citizen suit claim under RCRA. As a consequence, RaceTrac believes the

court lacks subject matter jurisdiction, and thus, immediate dismissal is required.

#### A. *Nonadversarial Notice Period*

As its first argument that the court lacks subject matter jurisdiction, RaceTrac asserts that the notice and delay requirements of 42 U.S.C. § 6972 have not been fulfilled. Section 6972(b)(1) provides that "[n]o action may be commenced under [RCRA's citizen suit provision] . . . prior to 60 days after the plaintiff has given notice of the violation to—(i) the Administrator; (ii) the State in which the alleged violation occurs; and (iii) to any alleged violator of such permit, standard, regulation, condition, requirement, prohibition, or order." 42 U.S.C. § 6972(b)(1). CPH sent RaceTrac a letter of intent to file a citizen suit claim on March 28, 2001. CPH then filed its original complaint, alleging six counts under Georgia law, on May 3, 2001, less than sixty days after the notice letter. However, CPH filed an amended complaint, which contained the RCRA citizen suit claim, on June 7, 2001, over sixty days after RaceTrac received CPH's notice letter.

RaceTrac argues that by filing the original complaint, CPH violated RCRA's statutory notice provision outright, and hence, the RCRA count should be dismissed. Furthermore, RaceTrac contends that filing an amended complaint thwarts the purpose of section 6972(b)(1) by creating an adversarial atmosphere. Accordingly, RaceTrac believes Congress intended to aid voluntary negotiation and remediation between the interested parties by creating a period of time free from all litigation. Consistent with this argument, RaceTrac submits CPH violated the statute by filing a complaint before the sixty day grace period expired but amending the complaint after the grace period.

The Eleventh Circuit Court of Appeals has not specifically addressed the issue of whether the court should look to the original complaint or the amended complaint to ascertain CPH's compliance with the RCRA notice requirements. Moreover, other courts have resolved the issue in conflicting manners. *Compare Supporters to Oppose Pollution v. Heritage Group,* 760 F.Supp. 1338 (N.D.Ind.1991) (holding that court should look to original complaint and finding no subject matter jurisdiction because of failure to provide nonadversarial notice period), *with City of Heath v. Ashland Oil, Inc.,* 834 F.Supp. 971 (S.D.Ohio 1993) (holding that court should look to amended complaint and finding subject matter jurisdiction because RCRA claim filed after the sixty day notice period). As such, the court looks to the plain language of the statute to resolve the issue. *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980) (the "starting point in every case involving construction of a statute is the language of the statute itself").

■■■ As described above, section 6972(b)(1) provides that "[n]o action may be commenced under [RCRA's citizen suit provision] . . . prior to 60 days after the plaintiff has given notice of the violation." 42 U.S.C. § 6972(b)(1). Following the text of the statute, the court must determine when an action is "commenced" for purposes of RCRA notice and delay. As has been held by other courts, this court finds that the verb "commence" requires, at a minimum, that the RCRA citizen suit claim appear in the complaint. *See Clorox Co. v. Chromium Corp.,* 158 F.R.D. 120 (N.D.Ill. 1994); *City of Heath,* 834 F.Supp. at 984; *Zands v. Nelson,* 779 F.Supp. 1254 (S.D.Cal.1991). Regardless of whether an amended complaint restarts a cause of action or merely modifies an existing one, a cause of action cannot be commenced before it appears in the pleading. *See* Fed.

R.Civ.P. 3. In fact, once amended, the original complaint is no longer before the court. *See Zands,* 779 F.Supp. at 1258. As a result, the court holds that for purposes of a notice and delay provision relating to a new claim which appears for the first time in the pleadings in the amended complaint, the court will look to the filing of the amended complaint to determine when the action is commenced. *Id.; City of Heath,* 834 F.Supp. at 984.

■■■ Again, although CPH filed its original complaint less than sixty days after it mailed the notice letter, the RCRA claim was not alleged in the original complaint. CPH filed the RCRA claim for the first time in the amended complaint, which occurred after the sixty-day delay period. Adhering to the above reasoning, CPH "commenced" the RCRA claim when it filed its amended complaint, more than sixty days after RaceTrac received notice. Accordingly, the court finds that CPH's notice was given more than sixty days prior to the "commencement" of the suit, and thus the notice fully complied with the sixty days required by statute.

Even if notice was given over sixty days prior to the commencement of the RCRA claim, RaceTrac still argues that the notice is insufficient because the notice period was adversarial. RaceTrac cites *Hallstrom v. Tillamook County* and asserts that Congress specifically intended the notice period to be nonadversarial to encourage the parties to settle the matter. 493 U.S. 20, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989). RaceTrac contends that filing any complaint, even without RCRA claims, creates an adversarial environment.

As always, the plain language of the statute must be followed. *Hallstrom,* 493 U.S. at 28, 110 S.Ct. 304. Indeed, " '[a]bsent a clearly expressed legislative intention to the contrary,' the words of the statute are conclusive." *Id.* (quoting *Con-*

*sumer Prod. Safety Comm'n,* 447 U.S. at 108, 100 S.Ct. 2051). Here, the plain language of the statute does not mention or require a "nonadversarial" period. In fact, the notice provision of RCRA provides that "[n]o action may be commenced *under subsection (a)(1)(A) of this section.*" Subsection 6972(a)(1)(A) is the RCRA citizen suit provision applicable to this case. Notably, RCRA's delay provision does not provide that no actions of any kind may be commenced prior to the expiration of sixty days; instead, the statute provides that no actions "under subsection (a)(1)(A)" may be commenced prior to the expiration of sixty days. Thus, the question becomes whether the legislative intention justifies the creation of a nonadversarial delay period. *See Zands,* 779 F.Supp. at 1260.

 In explaining the RCRA notice and delay provision, *Hallstrom* states that the provision serves two congressional purposes: (1) notice allows government agencies to take the lead role in enforcing environmental regulations; and (2) notice gives the alleged violator an opportunity to voluntarily comply with RCRA regulations. *Hallstrom,* 493 U.S. at 29, 110 S.Ct. 304. As to the first congressional purpose, the presence or lack thereof of a nonadversarial environment for a defendant will not affect a government agency's decision to intervene in a suit. *Zands,* 779 F.Supp. at 1260. Under either scenario, the government agencies involved still have a full sixty days to determine whether or not to bring a government suit or to work out some other resolution. *Id.*

As to the second congressional purpose, the presence of pending litigation may impact an alleged violator's willingness to comply with RCRA voluntarily. *Id.* Indeed, the policy of providing an opportunity for voluntary compliance "would be frustrated if citizens could immediately bring suit without involving federal or state enforcement agencies." *Hallstrom,*

493 U.S. at 29, 110 S.Ct. 304. However, it is not clear that suits on other matters, even if related to the same subject matter, would eliminate the opportunity for voluntary compliance with RCRA. *Zands,* 779 F.Supp. at 1260. Even in the face of other causes of action, alleged RCRA violators still have the opportunity, and the incentive, to take measures to stop commencement of the RCRA citizen suit action which has not yet been added to the lawsuit. *Id.* Concededly, the adversarial posture may impact the parties' ability to work together. The simple fact remains, however, that until the specific civil claim is brought, there remains an incentive to work out some settlement of the dispute. *See Clorox Co.,* 158 F.R.D. at 126–27; *Zands,* 779 F.Supp. at 1260.

Cognizant of the benefit associated with the second congressional purpose, the court holds that this benefit does not outweigh the consequences of a nonadversarial requirement, and certainly does not justify the creation of a new requirement that is not in the plain language of the statute. *Id.* Specifically, the court is mindful of problems that would arise with strict adherence to a nonadversarial period that RaceTrac suggests is required. *Id.* In circumstances such as this one where the initial complaint did not include a citizen suit claim, plaintiffs would be required to choose between two alternatives: (1) forego their citizen suit claim entirely in order to continue their present suit; or (2) stay their pending suit for a period of sixty days prior to commencing their citizen suit claim in a new or amended complaint. *Id.* The court does not believe that Congress intended that plaintiffs forego valid RCRA claims simply because they had alternative causes of action, nor does the court believe that Congress intended the notice and delay provision of section 6972(b)(2)(B) to impede plaintiffs' ability to bring claims that do not have notice and delay provisions. *Id.*

The court thus holds that while giving alleged violators an opportunity to voluntarily comply with RCRA regulations is a legitimate purpose for purposes of a notice and delay provision, this purpose in and of itself does not warrant the creation of a nonadversarial period that is not explicitly in the statute. *Id.* This simply is not one of the "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enter., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982)). As a result, the court holds that section 6972(b)(1)(A) does not require that the RCRA notice be followed by a completely nonadversarial period. Hence, the court's subject matter jurisdiction does not fail on this ground.

### B. *Procedural Deficiencies in Notice Letter*

RaceTrac also argues that *Hallstrom* requires dismissal of the RCRA citizen suit claim because CPH's notice letter was procedurally deficient. In *Hallstrom,* the Supreme Court interpreted RCRA's notice provision literally and ruled that the provision required strict compliance. 493 U.S. at 31, 110 S.Ct. 304. Consequently, the Court held that a RCRA suit had to be dismissed when the statutorily required notice to governmental agencies was given after the suit was filed, even if the district court stayed the suit for the period of time prescribed by RCRA's notice provision. *Id.* Although the stay seemingly fulfilled the object of the notice requirement, giving state and federal agencies time to decide whether to enforce the statute thereby obviating the need for a citizen suit, the Court required dismissal. *Id.* It applied the general rule that "if an action is barred by the terms of a statute, it must be dismissed." *Id.*

RaceTrac argues that the Supreme Court's strict approach in *Hallstrom* requires dismissal of CPH's RCRA claim. RaceTrac maintains that CPH has not strictly complied with the notice requirements as set forth in 42 U.S.C. § 6972(b) because CPH's notice letter was sent by certified mail to RaceTrac's corporate counsel. Under the Environmental Protection Agency's regulations governing RCRA notice, 40 C.F.R. Part 254, CPH was required to send the notice letter by registered mail to RaceTrac's registered agent. 40 C.F.R. § 254.2(a). Therefore, RaceTrac argues that these procedural deficiencies deprive the court of subject matter jurisdiction.

However, the court fails to see how *Hallstrom* controls the RCRA notice issue in the instant case. *See Two Rivers Terminal v. Chevron USA, Inc.,* 96 F.Supp.2d 426 (M.D.Pa.2000). Although settling on a strict interpretation of the statute itself, *Hallstrom* did not hold that a RCRA plaintiff had to comply with the administrative regulations dealing with notice. *Id.* Certainly, the regulations provide specific guidance on how to accomplish notice, but the statute only requires notice, not any particular form of notice. *Id.* Here, RaceTrac did receive notice, so the court will not dismiss the suit because the notice did not conform to 40 C.F.R. § 254.2(a). The court acknowledges that compliance with section 254.2(a) is preferable to noncompliance because it eliminates disputes over notice, but the court cannot agree that such regulatory compliance is a prerequisite to subject matter jurisdiction in federal court. *See Two Rivers Terminal v. Chevron USA, Inc.,* 96 F.Supp.2d 426 (M.D.Pa.2000); *Brewer v. Ravan,* 680 F.Supp. 1176 (M.D.Tenn.1988).

### IV. *RaceTrac's Motion for Judgment on the Pleadings*

In its final submission, RaceTrac asserts it is entitled to partial judgment on

the pleadings because CPH's citizen suit claim requests civil penalties which are allegedly not available for RCRA violations involving USTs. Thus, RaceTrac believes CPH has failed to state a claim upon which relief can be granted. RaceTrac submits that it is appropriate to raise this defense prior to trial in the form of a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) because the court has ten days to address the issue and considerable judicial resources will be saved by adjudication of the issue prior to trial. Further, RaceTrac asserts that allowing the motion at this time will not cause undue hardship to CPH because RaceTrac's motion involves straightforward statutory construction and a limited body of RCRA jurisprudence. Therefore, RaceTrac asks the court for leave to file its motion for judgment on the pleadings.

As noted by RaceTrac in its submission, Federal Rule of Civil Procedure 12(c) allows motions for judgment on the pleadings "[a]fter the pleadings are closed but within such time as not to delay the trial." In situations where the court's consideration of a motion for judgment on the pleadings would delay the trial, Rule 12(h)(2) preserves a party's right to raise appropriate defenses "at the trial on the merits." Fed.R.Civ.P. 12(h)(2). Hence, combining the directives of Rule 12(c) and 12(h)(2), when a motion for judgment on the pleadings would delay trial, the court should deny the motion and allow the defense to be raised at trial.

A recent decision by the Eleventh Circuit affirms this reading of Rule 12. In *Skrtich v. Thornton*, the defendants filed two motions to dismiss prior to trial. 280 F.3d 1295, 1306 (11th Cir.2002). Both mo-

tions failed to raise the defense of qualified immunity, and both motions were denied. *Id.* Then, more than three months after the defendants' answer had been filed, the defendants filed a third motion to dismiss based on qualified immunity. *Id.* at 1306–07. Instead of entertaining the defendants' pretrial motion, the court found that the defense had been "waived for the current stage of the litigation." *Id.* at 1306. Because "the defense ha[d] been available to defendants since early in the litigation," the court found that the defendants had "waive[d] their right to raise the defense at the pretrial stage." *Id.* The court held that "Rule 12 does not permit legal tactics employed for delay and [the court] cannot endorse them." *Id.* at 1307. Thus, the defendants were relegated to raising the qualified immunity defense at trial.

Here, RaceTrac filed two motions to dismiss on October 2, 2002, and neither addressed the civil penalty issue raised in the motion for judgment on the pleadings. Now, ten days before trial on the merits, RaceTrac has filed a third motion requesting leave to file a motion for judgment on the pleadings. Just as in *Skrtich*, the defense raised in RaceTrac's motion has been available to RaceTrac since CPH amended its complaint on June 7, 2001. Because the defense waited until the eve of trial to ask the court for relief, RaceTrac has "waive[d][its] right to raise the defense at the pretrial stage." *Id.* at 1306.

Moreover, the plain language of Rule 12(c) does not permit motions for judgment on the pleadings where the motion will "delay the trial." Contrary to Race-Trac's assertions, ten days prior to trial is insufficient time for the court, given its heavy caseload and other responsibilities, to determine RaceTrac's statutory arguments on the merits.[2] More importantly,

---

**2.** The court also notes that although RaceTrac filed the motion with the clerk's office ten

days before trial, a copy was not provided to

though, the court would be forced to resolve the merits of RaceTrac's assertions without the benefit of a response by CPH. Granting RaceTrac's motion under such circumstances would be fundamentally unfair to CPH. Therefore, because RaceTrac is not prejudiced by denial as RaceTrac's defense is preserved for trial by Rule 12(h)(2), the court DENIES RaceTrac's motion for leave to file motion for judgment on the pleadings [Doc. No. 84–1].[3]

## V. *Summary*

Based on the foregoing reasoning, the court holds that CPH's citizen suit claim should not be dismissed. As such, RaceTrac's motions for leave to file its motions to dismiss [Doc. Nos. 79–1 & 80–1] are GRANTED; however, after considering their merits, RaceTrac's motions to dismiss or stay [Doc. Nos. 79–2, 79–3, & 80–2] are DENIED. Further, RaceTrac's motion for leave to file motion for judgment on the pleadings [Doc. No. 84–1] is DENIED. The case will proceed to trial on October 22, 2002. Also, third party defendant Merchant Investment Group, Inc.'s unopposed motion to extend time through 9/20/02 to answer the third party complaint [Doc. No. 77–1] is GRANTED.

the chambers until October 15, 2002, only five business days before trial.

**3.** Even if the court granted RaceTrac's motion for judgment on the pleadings, the court would still be required to adjudicate the RCRA citizen suit claim to determine if CPH is entitled to injunctive relief under section 6972(a).